IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PAO TMK,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Court No. 21-00532 |

## COMPLAINT

Plaintiff, PAO TMK ("TMK"), a member of the TMK group companies which produce and export certain seamless steel pipe, by and through its counsel, brings this action against the United States. Plaintiff alleges and states as follows:

### Introduction

1. TMK is a leading global manufacturer and supplier of steel pipes for the oil and gas industry and for general use. TMK is the parent and trading company of the TMK group companies. TMK group companies operate around the globe through a number of subsidiaries and branches located in the Russian Federation ("Russia"), United States, and other countries in the European and Commonwealth of Independent States territories. TMK group companies' production lines include drill pipe, oil country tubular goods, line pipe, boiler tube, mechanical pipe, and structural pipe made of carbon, alloy, and stainless steel.

2. On July 8, 2020, Vallourec Star, LP ("Vallourec"), a U.S. subsidiary of the French multinational Vallourec S.A., filed petitions for the imposition of antidumping ("AD") and countervailing duties ("CVD") on imports of seamless carbon and alloy steel standard, line, and pressure pipe ("seamless pipe") from various countries, including Russia. *See* Letter from Schagrin Associates to the Sec'y to the U.S. International Trade Commission ("ITC"), *Petitions*

*for the Imposition of Antidumping and Countervailing Duties: Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Czech Republic, the Republic of Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (July 8, 2020) ("Petitions").

3. Vallourec, the sole domestic producer to have filed the Petitions, also imports seamless pipe from several non-subject countries.

4. Bentler and Tenaris, whose import data the ITC considered in its analysis disputed here, also import seamless pipe from non-subject countries.

5. The seamless pipe industry market depends on the downstream oil and gas market which had subsided because of the Saudi-Russian oil war and the global pandemic. *See* Hearing Transcript, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532, 133 (Valk) (Mar. 4, 2021).

6. Vallourec claimed injury by reason of imports from the subject countries and argued that those imports were not negligible. *See* Petitions at 18.

7. Imports are negligible if they account for less than three percent of the volume of all such merchandise imported into the United States in the most recent twelve-month period for which data is available that precedes the filing of the petitions. *See* 19 U.S.C. § 1677(24)(A)(i).

8. In the pre-hearing staff report, the U.S. International Commission ("Commission") found that the volume of subject imports from Russia was negligible. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czechia, Korea, Russia, and Ukraine: Prehearing Report*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Final), at IV-7 (Feb. 12, 2021) ("Prehearing Report").

9. After the release of the pre-hearing staff report and days before the due date for prehearing briefs, certain U.S. producers simultaneously revised their producer-importer questionnaires to reclassify imports from in-scope to out-of-scope seamless pipe.

10. On August 16, 2021, the Commission determined that imports from Russia were not negligible and reached a final affirmative determination. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Final), USITC Pub. No. 5222 (Aug. 2021).

11. On August 23, 2021, Commerce published the AD and CVD orders on seamless pipe from Russia. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Republic of Korea, the Russian Federation, and Ukraine*, 86 Fed. Reg. 47,055 (Dep't of Commerce August 23, 2021) (antidumping duty order); and *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Republic of Korea and the Russian Federation*, 84 Fed. Reg. 47,060 (Dep't of Commerce August 23, 2021) (countervailing duty orders) (collectively, "*AD/CVD Orders*").

## Administrative Decision To Be Reviewed

12. TMK brings this action to contest certain aspect of the final determination issued by the Commission in the investigation of *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Czech Republic, Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532. The final determination was published as *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea, Russia, and Ukraine*, 86 Fed. Reg. 46,882 (August 20, 2021). The Commission's final views for all countries (including Russia) are in the following publications: *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czechia*, Inv. No. 731-TA-1529 (Final), USITC Pub. No. 5183 (Apr. 2021) ("*Czechia Final Determination*"); and *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Final), USITC

Pub. No. 5222 (Aug. 2021) ("*Final Determination*") (incorporating the data and findings of *Czechia Final Determination*).

## Jurisdiction

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which confers "exclusive jurisdiction" to the Court over "any civil action commenced under section 516A {} of the Tariff Act of 1930," as amended (the "Act"), *i.e.*, 19 U.S.C. § 1516a. This action is commenced under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i).

## Standing

14. TMK is an exporter and producer of seamless pipe from Russia. TMK participated in the investigation that is the subject of this action through submission of questionnaire responses and arguments. TMK is therefore an interested party and party to the proceeding within the meaning of 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## Timeliness

15. A plaintiff must commence an action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) "{w}ithin thirty days after – the date of publication in the Federal Register" of an AD or CVD order based upon final affirmative determination by the Commission under section 1671d or 1673d. This action is timely because it is commenced within thirty days of August 23, 2021, the date of publication of the *AD/CVD Orders*, by filing the summons with the clerk of the court on September 21, 2021, followed by this complaint within 30 days of the filing of the summons.

**Background**

16.     Paragraphs 1 to 14 are incorporated herein by reference.

17.     In the Petitions, Vallourec compiled import statistics from USITC DataWeb based on Harmonized Tariff Schedule ("HTS") categories that covered out-of-scope products to support its claim that subject imports from Russia are not negligible.

18.     In response to the Petitions, the Commission instituted AD and CVD investigations on whether an industry in the United States is materially injured by reason of imports of seamless pipe from the subject countries. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe ("SSLP Pipe") from Czechia, Korea, Russia, and Ukraine; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 85 Fed. Reg. 42,431 (July 14, 2020).

19.     On July 10, 2020, the Commission issued importer questionnaires seeking import data for the twelve-month period preceding the petition and foreign producer or exporter questionnaires seeking data for U.S. exports.  This twelve-month period is relevant for the Commission's negligibility analysis.

20.     On August 31, 2020, the Commission made a preliminary determination that there is a reasonable indication that an industry in the United States is materially injured by reason of subject imports. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czechia, Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Preliminary) USITC Pub. No. 5114 (August 2020).

21.     On September 24, 2020, the Commission placed draft producer, importer, purchaser, and foreign producer questionnaires on the record of the investigations seeking comments, *inter alia*, on the methodology for negligibility calculations.

22.     On October 26, 2020, Vallourec commented that the Commission should rely on public import statistics which "are very closely aligned with the scope of the investigations," adjusting for out-of-scope merchandise volumes certified in questionnaire responses. *See* Letter from Schagrin Associates to Sec'y to the Commission, *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Czech Republic, Korea, Russia & Ukraine, Inv. Nos. 701-TA-654 – 655 and 731-TA-1529 – 1532 (Final): Comments on Draft Questionnaires*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Oct. 26, 2020).

23.     On December 30, 2020, the Commission issued the final producer, importer, purchaser, and foreign producer questionnaires and subsequently received responses.

24.     On February 19, 2021, the Commission's Prehearing Report found that imports of subject merchandise from Russia were below the three-percent negligibility threshold. *See* Prehearing Report at IV-7. The Prehearing Report relied on compiled data submitted in response to Commission questionnaires and official U.S. import statistics. The report subtracted from the official U.S. import statistics what the questionnaire responses reported to be out-of-scope products under the same HTS categories for the corresponding countries.

25.     Between February 23 and March 8, 2021, several U.S. producer-importers, keeping their identities confidential, revised earlier submitted data to the Commission. All of the revisions affected the negligibility calculations based on new interpretations of the already submitted data.

26.     One of the largest importers of seamless pipe submitted revised its import data to exclude otherwise in-scope seamless pipe because they were "specialty products" for specific end-use. The scope of the investigations, however, do not have any end-use or "specialty

product" exclusions. Reducing the reported total volume of otherwise in-scope imports from the non-subject country increased the percentage share of the Russian imports.

27. Other importers suddenly excluded from reporting proprietary grade merchandise. However, the scope language of the *AD/CVD Orders* does not provide for exclusions for proprietary grade merchandise. Were it appropriate for proprietary grade merchandise to be excluded from the negligibility analysis, many of the imports from Russia would qualify for the same exclusion. TMK exports proprietary grade subject products that were used in the Commissions calculations. The delayed data adjustments concerning proprietary grade merchandise rendered the numerator and denominator of percent share calculations inconsistent.

28. Certain importers submitted revised import data excluding mechanical, boiler, condenser, and heat exchange tubing which are otherwise in-scope merchandise as long as they meet the dimensional requirements.

29. Certain importers claimed exclusions in greater volumes than reported in official import statistics. The vast majority of the HTS categories in the official import statistics have outside diameter limits consistent with the scope language. Only four HTS categories do not have outside diameter limitations. Those categories may contain out-of-scope merchandise. The official import volumes under those categories, which encompass the potentially out-of-scope products, were less than what the importers claimed to be excluded merchandise. That is, those importers claimed more excluded volumes than exist in the official import data.

30. Those delayed data revisions concerning imports from non-subject countries reduced the total imports.

31. On March 4, 2021, the Commission held a public hearing.

32. In its post-hearing brief, TMK provided more details concerning U.S. producer-importers' data errors and deficiencies and urged the Commission to account for them when analyzing imports from non-subject countries. *See* Letter from Crowell & Moring LLP to Sec'y to the Commission, *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe ("SSLPPipe") from Russia: TMK Posthearing Brief*, Inv. Nos. 701–TA–654-655 and 731-TA1529-1532 (Final) (Mar. 11, 2021).

33. TMK placed import documentation of the U.S. producer-importers to contest the claims of out-of-scope imports from non-subject countries. Those documents, including bills of lading data. TMK also placed information on the record demonstrating that one importer was approved for Section 232 exclusions to import otherwise in-scope merchandise from the non-subject country which contradicted the importer's claim that it had no imports of in-scope merchandise.

34. On March 23, 2021, the Final Staff Report continued to find import volumes of subject merchandise from Russia to be negligible if some of the later data revisions were to be not incorporated. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czechia, Korea, Russia, and Ukraine: Staff Report*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532 (Final) (Mar. 23, 2021) ("Final Staff Report") at IV-8, D-18, D-19, Tables IV-3 and IV-4. The Commission's Final Staff Report acknowledged "substantial methodological concerns" with the importer questionnaire responses which at times "grossly overestimated" out-of-scope import volumes from a certain non-subject country.

35. On April 21, 2021, the Commission issued its final reports and views concerning imports from Czechia. *See Czechia Final Determination*.

36. On August 16, 2021, the Commission issued its final reports and views concerning imports from Korea, Russia, and Ukraine, adopting analyses in the leading investigation of subject imports from Czechia. *See Final Determination* at 5.

37. The Commission declined to rule out some of the data exclusions by the U.S. producer-importers which were contradicted by the plain scope language. The Commission stated, "We do not have a reasonable basis on this record for determining some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others." *See Czechia Final Determination* at 22.

38. The Commission relied on official import statistics data for Czechia, Korea, and Ukraine, but relied on importer questionnaires responses for imports from Russia, Mexico, and Germany.

39. The Commission did not make a finding that the import questionnaire responses from Mexico represented the entire universe of importers. Nor did Commerce provide any support for its finding concerning Germany.

40. The Commission disregarded in-scope import volumes contained in the Ukrainian importer's questionnaires.

41. The Commission acknowledged that the reported out-of-scope merchandise volume from Germany exceeded the official import data. Thus, the Commission did not rely on neither the official import statistics nor reported out-of-scope volumes. Instead, the Commission relied on the reported volumes for in-scope merchandise in the importer questionnaire responses.

42. The Commission failed to adjust imports from Italy and Argentina to account for overreported imports, despite making methodological changes concerning German imports arising out of similar inconsistencies.

43. On August 20, 2021, the Commission published its determination of material injury. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea, Russia, and Ukraine*, 86 Fed. Reg. 46,882 (August 20, 2021).

## STATEMENT OF CLAIMS

### Count One

44. Paragraphs 1 to 43 are incorporated herein by reference.

45. In its negligibility calculation, the Commission rejected out-of-scope German import data submitted by U.S. importers in their questionnaire response because out-of-scope volumes in the applicable questionnaire responses did not reconcile with official import statistics.

46. As noted in the post-hearing staff report, questionnaire data "grossly overestimated" out-of-scope import volumes from a certain non-subject country.

47. The Commission, however, did not reject out-of-scope Argentinian and Italian import data submitted by U.S. importers.

48. Like the German data, submitted import data from Argentina and Italy were "grossly overestimated" and did not reconcile with official import data.

49. Rejection of German import data, but acceptance of Argentinian and Italian import data suffering from the same defects, is arbitrary and capricious and not in accordance with the law.

### Count Two

50. Paragraphs 1 to 48 are incorporated herein by reference.

51. In its negligibility calculation, the Commission utilized in-scope data submitted for Mexico and Germany, noting that such data was certified.

52. The Commission rejected certified in-scope import data for Ukraine in its negligibility calculation, relying instead on official import data.

53. Using questionnaire data for Mexico in its negligibility calculation, but rejecting the same certified data for Ukraine is arbitrary and capricious and not in accordance with the law.

### Count Three

54. Paragraphs 1 to 54 are incorporated herein by reference.

55. In-scope imports from Mexico and Germany as reported in the importer questionnaire response were understated and contradicted by record evidence.

56. Substantial evidence was submitted regarding the understated in-scope imports from Germany and Mexico.

57. The Commission relied on the volume reported in the questionnaire response and did not address the information submitted detailing the understatement of in-scope imports from Germany and Mexico.

58. The Commission's failure to consider the understatement of in-scope imports from Mexico and Germany is not supported by substantial evidence and otherwise not in accordance with law.

### Count Four

59. Paragraphs 1 to 63 are incorporated herein by reference.

60. The Commission allowed exclusion of "mechanical, boiler, condenser and heat exchanger pipes" and proprietary grade products in its calculation of in-scope imports.

61. Mechanical, boiler, condenser and heat exchanger pipes are in-scope products as long as they meet the physical requirements, such as having a nominal outside diameter of less than or equal to 16 inches.

62. Record evidence demonstrates that certain importers not reporting volumes of mechanical, boiler, condenser and heat exchanger pipes did indeed import merchandise within physical requirements of the scope language.

63. Proprietary grade products are not excluded from the scope.

64. The Commission stated that it does not have "a reasonable basis on this record for determining some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others."

65. The Commission's failure to include in-scope imports and meaningfully analyze in-scope merchandise is not in accordance with law.

## Count Five

66. Paragraphs 1 to 74 are incorporated herein by reference.

67. The Commission's importer questionnaires were due by January 25, 2021

68. Certain importers provided revised responses between February 23 and March 8, 2021.

69. In *Low Enriched Uranium from France*, Inv. No 731-TA-909 (Review), USITC Pub. 3967 (Dec. 2007) at 6, V-6, fn. 2, the Commission concluded that the "the record of this review {was} incomplete" because "Areva submitted an incomplete importer questionnaire response…did not report {requested} data…{and} submitted its substantive importer and foreign producer questionnaires two and a half months after the Commission had requested all responses to be submitted, thus limiting the time for analysis and any data clarifications or corrections."

70. Consequently, the Commission "base{d its}determination on facts available as necessary and appropriate."

71. The delayed data revisions by certain importers, considering the methodological reporting errors and inconsistencies with other record evidence, raised more questions than they answered to aid the Commission's analysis.

72. The Commission should have rejected the revised data and relied on facts otherwise available pursuant to 19 U.S.C. § 1677e(a) to the extent the record was unclear;

73. The Commission's reliance on the revised data submitted by certain importers between February 23 and March 8, 2021, and subsequent revisions, and the used by the Commission to resolve factual matters that were unclear from the factual record is not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, TMK respectfully requests that this Court:

1. Hold that the *Final Determination* is unsupported by substantial evidence and not in accordance with law.

2. Remand the *Final Determination* to the Commission with instructions to issue a new determination consistent with the Court's opinion.

3. Provide such other relief as this Court may deem just and proper.

|  | Respectfully submitted, |
|---|---|
| Dated: October 21, 2021 | Daniel Cannistra<br>John Anwesen<br><br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC  20004-2595<br>Tel: 202.624.2902<br>E-mail: DCannistra@crowell.com |