# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| PAO TMK, | |
| *Plaintiff,* | |
| v. | |
| UNITED STATES OF AMERICA, | Court No. 21-00532 |
| *Defendant,* | ***PUBLIC VERSION*** |
| and | |
| UNITED STATES STEEL CORPORATION, AND VALLOUREC STAR, LP | |
| *Defendant-Intervenors.* | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Dated:  March 11, 2022

Daniel J. Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902

*Counsel to Plaintiff PAO TMK*

TABLE OF CONTENTS

RULE 56.2 STATEMENT ..................................................................1

I.      Administrative Determination Under Review...........................1

II.     Issues Presented.......................................................................2

STATEMENT OF THE FACTS ....................................................... 2

ARGUMENT ....................................................................................8

I.      Introduction and Summary of Argument .................................8

II.     Standard of Review ................................................................13

III.    The Commission's Exclusion of Imports of Other Importers
from Germany and Mexico Is Not Supported by Substantial Evidence
and Not in Accordance with the Law .......................................14

    A.  The Commission's Determination that There Were No Other Importers
        of SSLP from Germany and Mexico Is Not Supported by Substantial Evidence
        15

    B.  The Commission's Determination Regarding Imports from Germany Is
        Not in Accordance with the Law....................................................18

IV.     The Commission's Negligibility Determination Based on
Import Data from Argentina and Italy Is Not Supported by Substantial
Evidence ........................................................................................21

V.      The Commission's Use of Ukrainian Import Data Is Not in
Accordance with the Law .............................................................25

VI.     Remand is Necessary to Reopen the Record to Remedy
Material Inaccuracies Regarding [          ] Imports of SSLP ............28

VII.    The Commission's Determination Regarding the Designation of
Certain Imports as Non-SSLP Was Not in Accordance with the Law...31

VIII.   The Commission's Refusal to Analyze Like Product Questions
Is Not in Accordance with the Law.............................................38

CONCLUSION ................................................................................41

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
　70 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) ................................. 14, 32

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
　882 F. Supp. 2d 1377 (Ct. Int'l Trade 2013) ...................................... 31

*Atlantic Sugar, Ltd. v. United States*,
　744 F.2d 1556 (Fed. Cir. 1984) ............................................................ 16

*Celanese Chems. Ltd. v. United States*,
　31 C.I.T. 279 (Ct. Int'l Trade 2007)................................................. 9, 10

*Changzhou Wujin Fine Chem. Factory Co., Ltd., v. United States*,
　701 F.3d 1367 (Fed. Cir. 20120) ............................................. 13, 14, 20

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
　467 U.S. 837 (1984) ............................................................................... 38

*Cleo Inc. v. United States*,
　501 F. 3d 1291 (Fed. Cir. 2007) .......................................................... 40

*Gen. Motors Corp. v. United States*,
　827 F. Supp. 774 (Ct. Int'l Trade 1993) ............................................. 36

*Hosiden Corp. v. Advanced Display Mfrs. of America*,
　83 F.3d 1561 (Fed. Cir. 1996) ........................................................ 40, 41

*Huaiyin Foreign Trade Corp. v. United States*,
　322 F.3d 1369 (Fed. Cir. 2003) ............................................................ 16

*Nan Ya Plastics Corp., Ltd. v. United States*,
　128 F. Supp. 3d 1345 (Ct. Int'l Trade 2015) ...................................... 24

*Navneet Publications (India) v. United States*,
　32 C.I.T. 169 (2008)............................................................................... 37

*Siemens Energy, Inc. v. United States,*
806 F.3d 1367 (Fed. Cir. 2015) ........................................................ 13

*Torrington Co. v. United States,*
747 F. Supp. 744 (Ct. Int'l Trade 1990), *aff'd*, 938 F.2d 1278 (Fed. Cir. 1991) ..................................................................................... 41

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951) ................................................................ 32, 33

STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................ 13

19 U.S.C. §§ 1671b(a)(1),1671d(b)(1), 1673b(a)(1), and 1673d(b)(1) ........................................................................................... 8

19 U.S.C. § 1677(24)(A) ........................................................ 15, 39

19 U.S.C. § 1677(24)(A)(i) ............................................................ 8

19 U.S.C. § 1677(24)(C) .......................................................... 8, 38

19 U.S.C. § 1677e(a) ................................................................. 24

19 USC 1677(24)(c) ................................................................... 32

OTHER AUTHORITIES

*Certain Lined Paper School Supplies from China, India, and Indonesia (Final),*
USITC Pub. 3884, Inv. Nos. 701-TA-442-443 .................................... 37

*Low Enriched Uranium from France,*
Inv. No 731-TA-909 (Review), USITC Pub. 3967 (Dec. 2007) at 6, V-6, fn. 2 ("*Low Enriched Uranium from France*") ........................ 24, 25, 26

## RULE 56.2 STATEMENT

## I.    Administrative Determination Under Review

TMK brings this action to contest certain aspect of the final

determination issued by the Commission in the investigation of

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe*

*from the Czech Republic, Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-

654-655 and 731-TA-1529-1532. The final determination was published

as *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe*

*from Korea, Russia, and Ukraine*, 86 Fed. Reg. 46,882 (August 20,

2021). The Commission's final views for all countries (including Russia)

are in the following publications: *Seamless Carbon and Alloy Steel*

*Standard, Line, and Pressure Pipe from Czechia*, Inv. No. 731-TA-1529

(Final), USITC Pub. No. 5183 (Apr. 2021), Appx0001466-0001518 and

Appx0001529-0001823, ("*Czechia Final Determination*"); and *Seamless*

*Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea,*

*Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1529-1532

(Final), USITC Pub. No. 5222 (Aug. 2021), Appx0002155-Appx0002227,

(incorporating the data and findings of *Czechia Final Determination*).

## II.   Issues Presented

**Was the Commission's determination that Russia was not a negligible source of subject imports supported by substantial evidence and in accordance with the law?**

No.  The Commission's factual determinations incorporated into its negligibility determination were unsupported by substantial evidence. In addition, the Commission's inconsistent treatment of identical factual scenarios in the context of the Commission's negligibility determination was not in accordance with the law. Moreover, the Commission's failure to capture all imports into the negligibility determination and its failure to undertake the necessary statutory analysis was not in accordance with the law.

## STATEMENT OF THE FACTS

On July 8, 2020, Vallourec Star, LP ("Vallourec"), a U.S. subsidiary of the French multinational Vallourec S.A., filed petitions for the imposition of antidumping ("AD") and countervailing duties ("CVD") on imports of seamless carbon and alloy steel standard, line, and pressure pipe ("seamless pipe" or "SLPP") from various countries, including Russia. Appx000229-0028915 ("Petitions").

Vallourec, the sole domestic producer to have filed the Petitions, also imports seamless pipe from several non-subject countries. Benteler and

Tenaris, whose import data the Commission considered in its analysis disputed here, also import seamless pipe from non-subject countries.

Vallourec claimed injury by reason of imports from the subject countries and argued that those imports were not negligible. Appx0015651. In the Petitions, Vallourec compiled import statistics from USITC DataWeb based on Harmonized Tariff Schedule ("HTS") categories that covered out-of-scope products to support its claim that subject imports from Russia are not negligible.

In response to the Petitions, the Commission instituted AD and CVD investigations on whether an industry in the United States is materially injured by reason of imports of seamless pipe from the subject countries. Appx0001000-Appx0001001.

On July 10, 2020, the Commission issued importer questionnaires seeking import data for the twelve-month period preceding the petition and foreign producer or exporter questionnaires seeking data for U.S. exports. This twelve-month period is relevant for the Commission's negligibility analysis.

On August 31, 2020, the Commission made a preliminary determination that there is a reasonable indication that an industry in

the United States is materially injured by reason of subject imports. Appx0001003-0001206.

On September 24, 2020, the Commission placed draft producer, importer, purchaser, and foreign producer questionnaires on the record of the investigations seeking comments, inter alia, on the methodology for negligibility calculations.

On October 26, 2020, Vallourec commented that the Commission should rely on public import statistics which "are very closely aligned with the scope of the investigations," adjusting for out-of-scope merchandise volumes certified in questionnaire responses. Appx-0033130-0033134.

On December 30, 2020, the Commission issued the final producer, importer, purchaser, and foreign producer questionnaires and subsequently received responses.

On February 19, 2021, the Commission's Prehearing Staff Report found that imports of subject merchandise from Russia were below the three-percent negligibility threshold. Appx0045604-0045605 ("Prehearing Staff Report"). The Prehearing Staff Report relied on compiled data submitted in response to Commission questionnaires and

official U.S. import statistics. The report subtracted from the official U.S. import statistics what the questionnaire responses reported to be out-of-scope products under the same HTS categories for the corresponding countries.

After the issuance of the staff report and days before the hearing, three importers revised earlier submitted data to the Commission. All of the revisions affected the negligibility calculations based on new interpretations of the already submitted data based on adjustments to in-scope and out-of-scope products. Appx0048489-0048678.

One of the largest importers of seamless pipe submitted revised its import data to exclude otherwise in-scope seamless pipe because they were "specialty products" for specific end-use. The scope of the investigations, however, do not have any end-use or "specialty product" exclusions. Reducing the reported total volume of otherwise in-scope imports from the non-subject country increased the percentage share of the Russian imports.

Other importers simultaneously reported high volumes of "proprietary" imports in the SSLP HTS categories, thereby seeking their exclusion from the scope of the like product. However, the like

product scope does not provide for exclusions for proprietary grade merchandise.

Certain importers submitted revised import data excluding mechanical, boiler, condenser, and heat exchange tubing which are otherwise in-scope merchandise as long as they meet the dimensional requirements. Certain importers claimed exclusions in greater volumes than reported in official import statistics. The vast majority of the HTS categories in the official import statistics have outside diameter limits consistent with the scope language. Only four HTS categories do not have outside diameter limitations.

In its post-hearing brief, TMK detailed U.S. importers' data errors and deficiencies and urged the Commission to account for them when analyzing imports from non-subject countries. Appx0049924-0050305.

TMK placed import documentation related to those imports to contest the claims of non-SSLP imports from non-subject countries. Those documents, including bills of lading data. TMK also placed information on the record demonstrating that one importer was approved for Section 232 exclusions to import otherwise in-scope

merchandise from the non-subject country which contradicted the importer's claim that it had no imports of in-scope merchandise.

On March 23, 2021, the Final Staff Report (Appx0048489-0048678) continued to find import volumes of subject merchandise from Russia to be negligible if some of the later data revisions were to be not incorporated. Apxx0001282-Appx0001283, Appx0001421-0001422. The Commission's Final Staff Report acknowledged "substantial methodological concerns" with the importer questionnaire responses which at times "grossly overestimated" out-of-scope import volumes from a certain non-subject country. Appx0001421-0001422.

On April 19, 2021, the Commission issued its final reports and views concerning imports from Czechia. Appx0001466-0001518 and Appx0001529-0001823. On August 16, 2021, the Commission issued its final reports and views concerning imports from Korea, Russia, and Ukraine, adopting analyses in the leading investigation of subject imports from Czechia. Appx0002165. The Commission declined to rule out some of the data exclusions by the U.S. producer-importers which were contradicted by the plain scope language. The Commission stated, "{w}e do not have a reasonable basis on this record for determining

7

some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others." Appx0001485.

On August 20, 2021, the Commission published its determination of material injury. Appx0002228.

## ARGUMENT

### I.    Introduction and Summary of Argument

The statute requires that an investigation be terminated with a no injury determination if imports of the subject merchandise are found to be negligible. 19 U.S.C. § 1677(24)(A)(i); *see also* 19 U.S.C. §§ 1671b(a)(1),1671d(b)(1), 1673b(a)(1), and 1673d(b)(1)). Imports of merchandise corresponding to a domestic like product are negligible if they account for less than three percent of the volume of all such merchandise imported into the United States in the most recent twelve-month period for which data is available that precedes the filing of the petition. 19 U.S.C. § 1677(24)(A)(i). The Commission "may make reasonable estimates on the basis of available statistics" of the relevant import levels for purposes of deciding negligibility. *Id.* § 1677(24)(C). If the Commission determines that imports of the subject merchandise are

negligible, the investigation shall be terminated with respect to those imports. *See id.* § 1673d(b)(1).

The Commission may use either official government import data or any other set of data, such as importer questionnaire data, to determine negligibility. *Celanese Chems. Ltd. v. United States*, 31 C.I.T. 279, 288 (Ct. Int'l Trade 2007) ("*Celanese Chems*"). The Commission, however, is bound to rely on the "best information available" contained in the record. *Id.* at 291 (citing *Calabrian Corp. v. United States*, 794 F. Supp. 377, 386 (Ct. Int'l Trade 1992).

In *Celanese Chems*, the domestic producer challenged the Commission's negative injury determination. In that case, the Commission relied on importer questionnaire data to calculate the volume of subject imports (*i.e.*, imports from Taiwan) and unadjusted official import data to calculate the volume of non-subject imports (*i.e.*, imports form non-subject countries). *Id.* at 288-293. However, the Commission's administrative record contained U.S. Census Bureau data for determining the volume of subject imports from Taiwan which the Commission did not consider. The Court remanded the case to the Commission on this issue because it was "not clear that the Commission

{} relied on the best information available. *Id.* at 291. Additionally, the non-subject import data used by the Commission included out-of-scope products. This Court remanded the case to the Commission because it had "failed to provide a satisfactory explanation for its decision" not to adjust the official import data for non-subject imports. *Id.* at 293.

In the instant case, the Commission's Prehearing Staff Report found that imports of subject merchandise from Russia were below the three-percent negligibility threshold. However, following the release of the staff report and days before the hearing in this matter, [

] all U.S. producers, in a coordinated action, submitted revised importer questionnaires, which purported to demonstrate that all three companies imported large volumes of imported pipe and tube outside the scope of the SSLP like product definition (i.e., non-SSLP) but imported within the applicable Harmonized Tariff Schedule ("HTS") categories. Appx0048489-0048678. These data untimely resulted in the reduction of the denominator used in the Commission's negligibility calculation and inflated the share of share of imports by Russia.

In its final determination, the Commission found that Russia accounted for [      ] percent of total imports. Appx0002191. In reaching this determination, the Commission adopted the negligibility analyses from its "determination and views Pub. 5183 at 17-25; Confidential Views, EDIS Doc. 740272 at 17-25; Supplemental CR/PR at Table I-6." Appx0002191-0002192. The referenced analysis provides the following data upon which the Commission reached its determination:

**Table I-6**
**SSLP pipe: U.S. imports in the twelve-month period preceding the filing of the petitions**
**July 2019 through June 2020**

| Country | July 2019 through June 2020 | | | |
|---|---|---|---|---|
| | Quantity (short tons) | Share quantity (percent) | | |
| Czechia | 26,029 | | ] | ] |
| Korea | 8 | | ] | ] |
| Russia | [ | ] | | ] |
| Ukraine | 6 | | ] | ] |
| All other sources | | ] | | ] |
| All import sources | [ | ] | ] | ] |

Appx0002134.

This compilation is based on an eclectic mix of data sources and represents the eighth version of the negligibility table compiled by the Commission. The data sources for this version were as follows:

11

## Data Sources for 8th Negligibility Calculation

|  | Import Data Used by the Commission in its Negligibility Determination | Import Data Disregarded by the Commission |
|---|---|---|
| Ukraine | Trade data | Importer's questionnaire |
| Germany | [          ] importer questionnaire | Trade data; [          ] imports and imports from any other importer from Germany |
| Mexico | [          ] importers questionnaire | Trade data and imports from other importer from Mexico |
| Italy and Argentina | Trade data minus [          ] non-subject imports | Excluded imports from all other importers and resulted in negative imports |

The mix of data sources used in the final compilation was driven by what the Commission's staff recognized as "substantial methodological concerns" with the at times "grossly overestimated" not in-scope (non-SSLP) import volume reported by certain U.S. Producers in their importer questionnaires.[1] Despite the findings above, the Commission

---

[1] "First, when reported out of scope U.S. imports of non-SSLP pipe is removed from official statistics of U.S. imports, in-scope U.S. imports of SSLP pipe from Germany are [          ] short tons in 2018. Upon further inspection, [          ] suggest that [          ] may have grossly overestimated import volumes of product that entered under the primary HTS statistical reporting numbers for SSLP pipe from Germany by [          ] in 2018. The same data imply that [          ] may have also overestimated import volumes by [          ] short tons in 2018." Appx0001421.

utilized information that was known to be inaccurate and replete with "substantial methodological concerns." The Commission's use of flawed data in its negligibility determination is not supported by substantial evidence nor is it in accordance with the law.

## II.    Standard of Review

The Court must not uphold the Commission's determinations, findings, or conclusions unless they are supported by substantial evidence on the record, and otherwise in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Siemens Energy, Inc. v. United States*, 806 F.3d 1367, 1369 (Fed. Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951)). Support by substantial evidence must be determined on the entirety of the record, considering the evidence that detracts from the agency's conclusion. *Id.* at 488.

"{A}n agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd., v. United States*, 701 F.3d 1367, 1377

---

(Fed. Cir. 20120) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)). While "the substantial evidence standard applies to review of factual determinations{,}" where "we are evaluating the agency's reasoning . . . {we} review{} under the arbitrary and capricious (or contrary to law) standard." *Id.* (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48–49 (1983)); *see also* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2012) (directing that the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). Additionally, "{a}n agency acts arbitrarily, and therefore unreasonably, when it 'entirely fail{s} to consider an important aspect of the problem' or 'offer{s} an explanation for its decision that runs counter to the evidence before {it}." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 70 F. Supp. 3d 1328, 1335, n.33 (Ct. Int'l Trade 2015) (citing *Motor Vehicle Mfrs. Ass'n* , 463 U.S. 29).

## III.   The Commission's Exclusion of Imports of Other Importers from Germany and Mexico Is Not Supported by Substantial Evidence and Not in Accordance with the Law

As noted above, only imports by [          ] were included as imports from Germany and only [          ] imports were included as imports

14

from Mexico. All other imports from Germany and Mexico were excluded from the Commission's negligibility analysis. The Commission's failure to capture all imports from Germany and Mexico in its negligibility analysis was contrary to law.

Negligibility is addressed in 19 U.S.C. § 1677(24)(A) (emphasis added):

> Except as provided in clauses (ii) and (iv), imports from a country of merchandise corresponding to a domestic like product identified by the Commission are "negligible" if such imports account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes —.

As discussed below, the Commission excluded [   ] German importers and [   ] Mexican importers. Of these, [   ] are known to have imported SSLP. Therefore, the Commission failed to capture the volume of "all such merchandise" in its negligibility calculation and its determination was not in accordance with the statutory mandate. As such, the Commission's determination is not in accordance with the law.

A.   *The Commission's Determination that There Were No Other Importers of SSLP from Germany and Mexico Is Not Supported by Substantial Evidence*

In its negligibility analysis, the Commission derived its calculation of Germany imports based exclusively on [            ] importer

questionnaire. Appx0002134. Mexican imports were based exclusively on [      ] importers questionnaire. The Commission's determination that there was one importer of SSLP from Germany and one importer of SSLP from Mexico are not supported by substantial evidence.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003). Substantial evidence must be measured by a review of the record as a whole, "taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

As evidenced in the propriety U.S. Customs and Border Protection ("CBP") data released by the Commission, there were [   ] other importers of German pipe in the applicable Harmonized Tariff Schedule ("HTS") categories. Appx0002134.[2]  These importers accounted for

---

[2] Appx0002134 references CNIF Import Statistics provided by CBP to the Commission (Appx0052766). These data were released to the parties in a string PDF document. Plaintiffs have arranged the data contained in this 2580-page PDF document to allow for meaningful analysis. The output of that data arrangement is provided in **Exhibits 1 – 5** of this brief.

[       ] metric tons in 2019 alone. Appx0052766; *see also* **Exhibit 1** to this submission. No imports associated with these importers were captured in the Commission's negligibility analysis. Within the purely subject SSLP HTS categories, there were [    ] other importers from Germany, accounting for [      ] metric tons in 2019. *Id.*; *see also* **Exhibit 2**. Therefore, the Commission's determination that [         ] is the only importer of German SSLP is contradicted by the CBP data and demonstrably incorrect.

With respect to Mexico, there were [    ] other importers of pipe in the applicable HTS categories. *Id*; *see also* **Exhibit 3**. These importers accounted for [      ] metric tons in 2019 alone. *Id.* None of these importers were captured in the Commission's negligibility analysis. Within the purely subject SSLP HTS categories, the other importers from Mexico accounted for [    ] metric tons in 2019. *See* **Exhibit 4**. Therefore, the Commission's determination that [         ] is the only importer of Mexican SSLP is contradicted by CBP data and demonstrably incorrect.

While the CBP data was not released to the parties until well after the briefing closed, the Commission was referencing this data in its own

internal analysis of import data. Despite its familiarity with this data and TMK's exhaustive demonstrations that [          ] and [          ] were not the only importers for SSLP from Germany and Mexico, the Commission improperly limited its calculation of volume of all such merchandise to imports from those two companies.

B.    *The Commission's Determination Regarding Imports from Germany Is Not in Accordance with the Law*

The Commission recognized that [                          ] overreported imports from Germany.[3] While the Commission "recognized" the issues raised by TMK regarding those imports, the Commission's determination lacks an analysis of those facts and its resolution of the problem caused by this overreporting was not in accordance with the law. Specifically, its acceptance of one questionnaire and rejection of another questionnaire to make the

---

[3] "We also observe that questionnaire revisions from [                          ], combined, report a substantially greater volume of in-scope product and out-of-scope product purportedly imported under the primary HTS statistical reporting numbers during the negligibility period than is observed in the official import statistics. Because of these discrepancies, we decline to rely on the reported out-of-scope merchandise to calculate import volumes from Germany and instead, because [          ] is the [                    ] of in-scope SSLP pipe from Germany, we rely on its reported imports of SSLP pipe from Germany as the best information available for measuring the volume of SSLP pipe from Germany. Therefore, imports of SSLP pipe from Germany reflect [          ] reported imports of SSLP pipe from Germany reported in its importer questionnaire response." Appx0001486.

numbers work was arbitrary, captious and not in accordance with the law.  And, because no explanation of the disparate treatment is provided, remand is appropriate.

The Commission recognized that it could not accept questionnaires from both [                                    ] as they alone accounted for more volume than was imported from Germany.  Specifically, the Commission determined that both "[                                    ], combined, report a substantially greater volume of in-scope product and out-of-scope product purportedly imported under the primary HTS statistical reporting numbers during the negligibility period than is observed in the official import statistics." Appx0001486. Unexplained is why simply splitting the difference and accepting one questionnaire, while rejecting the other questionnaire, is a rational determination.

Yet, that is precisely what the Commission did – it split the difference. The overstatement of imports by [                                    ] combined precluded the Commission for capturing other imports of SSLP from Germany because doing so would result in a negative import volume from Germany.  So, the Commission instead simply accepted [            ] questionnaire and ignored [            ] questionnaire.

19

At no point does the Commission meaningfully address the
information provided by TMK that provided specific shipments and bills
of lading demonstrating that there were other importers of SSLP from
Germany, namely, [          ].  Nor did the Commission explain why it
accepted [          ] quantification of non-subject SSLP, but rejected
[          ] quantification of the same non-subject SSLP. If [          ]
data was so fundamentally flawed to merit rejection, then why was
[          ] data also not fundamentally flawed?

"{A}n agency's finding may be supported by substantial evidence,"
yet "nonetheless reflect arbitrary and capricious action." *Changzhou
Wujin Fine Chem. Factory Co., Ltd.*, 701 F.3d at 1377 (quoting *Bowman
Transp., Inc.*, 419 U.S. at 284). While "the substantial evidence
standard applies to review of factual determinations{,}" where "we are
evaluating the agency's reasoning . . . {we} review{} under the arbitrary
and capricious (or contrary to law) standard." *Id.* (citing *Motor Vehicle
Mfrs. Ass'n*, 463 U.S. at 48-49); *see also* Administrative Procedure Act, 5
U.S.C. § 706(2)(A) (2012) (directing that the Court shall "hold unlawful
and set aside agency action, findings, and conclusions found to be
arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."). Additionally, "{a}n agency acts arbitrarily, and therefore unreasonably, when it 'entirely fail{s} to consider an important aspect of the problem' or 'offer{s} an explanation for its decision that runs counter to the evidence before {it}." *Ad Hoc Shrimp Trade Action Comm.*, 70 F. Supp. at 1335, n.33 (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. 29).

### IV.    The Commission's Negligibility Determination Based on Import Data from Argentina and Italy Is Not Supported by Substantial Evidence

The Commission's calculation of import data for Argentina and Italy is not supported by substantial evidence because the Commission's calculation captured imports greater than all imports in the applicable HTS category. In calculating imports from other countries, inclusive of Argentina and Italy, the Commission "deduct{ed} reported imports of out-of-scope products from [                ], [                ], [                ], and [                ] . . ." Appx002133. In applying this methodology, the Commission determined that [          ] imported [          ] tons of SSLP and non-SSLP from Argentina and Italy. Like Germany, this volume represents more than total imports from Italy and Argentina. But unlike Germany, the Commission decided to simply accept this overreporting and made no adjustments.

The Commission's rational for the disparate treatment of similar situations was as follows:

> We acknowledge that TMK raised with respect to imports from Italy and Argentina – two countries that fall within the "all others" category – concerns that are similar to those noted above with respect to imports from Germany, namely that the reported in-scope and out-of-scope merchandise from Italy and Argentina exceed the volumes recorded under the primary HTS statistical reporting numbers. However, TMK's claims with respect to imports from these countries could not be verified and the Commission therefore declines to disregard the out-of-scope volumes reported for these countries.

Appx001488.

The Commission's claim that [          ] overreporting "could not be verified" must be rejected. The applicable data is summarized below.

[          ] claimed to have imported a total of [          ] short tons of non-SSLP and SSLP from Italy and Argentina. Total imports from Italy and Argentina were only [          ] short tons. Appx0002163. Neither the claimed imports from [          ] nor the total imports from Italy and Argentina are disputed facts. As such, there is a clear overstatement of imports by [          ], a fact that the Commission simply disregarded as "unverifiable."



Appx0002163.

Separate from methodological concerns with [          ] SSLP versus non-SSLP calculation, the total import volumes reported by [          ], like [                    ], are factually impossible and conflict with official statistics of total U.S. imports. The Commission's Final Staff Report aptly recognizes this fact and that, by extension, [          ] and reported data [                         ]:

> The same data imply that [          ] may have also overestimated import volumes by [          ] short tons in 2018. Other firms, and all firms that provided earlier responses, reported out-of-scope imports that entered under the primary HTS statistical reporting numbers for SSLP pipe in 2018 had a [                    ] short ton absolute difference in reported imports compared to [                         ].

Appx0001421.

Inexplicably, the Commission could verify the overstatement for 2018, but could not do so for the negligibility period. That conclusion is not supported by evidence on the record. [          ] import volume was provided and total HTS data was gathered for the same period. The

"verification" of the overstatement would only necessitate comparing one set of data to another in precisely the same manner utilized for Germany and Ukrainian imports.

To be supported by substantial evidence, the Commission's determination "'must take into account whatever in the record fairly detracts from its weight,' including 'contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Nan Ya Plastics Corp., Ltd. v. United States*, 128 F. Supp. 3d 1345, 1355 (Ct. Int'l Trade 2015) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994)). Instead, the Commission simply deferred to certified questionnaire responses without consideration of record evidence that conflicts with those questionnaire responses.

In the past, where the Commission has had to evaluate untimely submitted and flawed data in a revised importer questionnaire response, it has applied facts available pursuant to 19 U.S.C. § 1677e(a). In *Low Enriched Uranium from France*, the Commission concluded that "the record of this review {was} incomplete" because "Areva submitted an incomplete importer questionnaire response...did

not report {requested} data…{and} submitted its substantive importer and foreign producer questionnaires two and a half months after the Commission had requested all responses to be submitted, thus limiting the time for analysis and any data clarifications or corrections." *Low Enriched Uranium from France*, Inv. No 731-TA-909 (Review), USITC Pub. 3967 (Dec. 2007) at 6, V-6, fn. 2 ("*Low Enriched Uranium from France*"). Consequently, the Commission "base{d its}determination on facts available as necessary and appropriate."

The Commission should have done the same in this case. Instead of faulting TMK's argument as unverifiable, the Commission should have faulted [        ] untimely submission of revised importer questionnaire data which was contradicted by the official import statistics.

## V.   The Commission's Use of Ukrainian Import Data Is Not in Accordance with the Law

As noted above, the Commission turned to [        ] and [        ] importers questionnaire responses as the sole source for German and Mexican import data. Use of these data was made despite the Commission's extensive "methodological concerns" associated with the data reported in these questionnaire responses, including reported

import volumes higher than total reported imports in the official import statistics. In accepting these questionnaire responses, the Commission explained, "{w}e do not have a reasonable basis on this record for determining some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others." Appx0001485.

Except, apparently, in the case of Ukraine. For Ukraine, the Commission disregarded the certified importers questionnaire, despite finding that it did "not have a reasonable basis on this record for determining some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others." *Id.* But, that is what the Commission did. It accepted [

] questionnaire responses despite their imports substantially exceeding total import volumes in the applicable HTS categories, but rejected [            ] response for the same reason.

Where an agency's methodology is reviewed for its accordance with the law, "{the} decision will be set aside if it is arbitrary and capricious." Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2012) (directing that the Court shall "hold unlawful and set aside agency action,

findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

One need only compare the two statements below to appreciate the tortured path undertaken by the Commission:

> Explanation for Accepting [
>
> ̄
>
> We acknowledge that TMK raised with respect to imports from Italy and Argentina – two countries that fall within the "all others" category – concerns that are similar to those noted above with respect to imports from Germany, namely that the reported in-scope and out-of-scope merchandise from Italy and Argentina exceed the volumes recorded under the primary HTS statistical reporting numbers. However, TMK's claims with respect to imports from these countries could not be verified and the Commission therefore declines to disregard the out-of-scope volumes reported for these countries.

Appx0001488.

> Explanation for Rejecting [                    ] Questionnaire Response
>
> While one importer did report imports of SSLP pipe from Ukraine, these reported imports [                              ] in the primary HTS statistical reporting numbers for the negligibility period, and no importers reported imports of out-of-scope merchandise from Ukraine. Consequently, we find that official import statistics constitute the best available information for measuring subject imports from these countries.

Appx0001487.

27

Same issue, different approach. As noted by the Commission, it has no basis for disregarding some questionnaire, but not others, particularly when confronted with the same factual situation. This disparate treatment is, on its face, arbitrary. Particularly because the Commission accepted and used every other element of [          ] importers questionnaire in its determination.

## VI.   Remand is Necessary to Reopen the Record to Remedy Material Inaccuracies Regarding [          ] Imports of SSLP

The record in the proceeding contains material inaccuracies requiring remand. Throughout the underlying proceeding, TMK submitted factual information identifying specific imports by [          ] that were SSLP and should have been included in the Commission's negligibility calculation. Appx0049300, Appx0049303, Appx0049311-0049313, and Appx0049357-0049372. The data provided by TMK included bill of lading data, clearly providing SSLP specifications and showing [          ] as the importer of record. Scope exclusion request data was also submitted, which likewise indicated that [          ] was importing SSLP. The Commission never meaningfully addressed this factual information and simply accepted the claim that [          ] did not import SSLP.

28

In fact, the Commission did not address these issues or undertake a simple analysis that would have readily confirmed that [          ] imported SSLP, despite being in the possession of information directly confirming SSLP imports by [         ]. In the course of its investigation, the Commission received import data from the CBP providing data on the importer of record, quantity, exporter, consignee and HTS category. *See* Appx0052766. Importantly, CBP also provided information on the amount of trade remedy duties paid on an import-by-import basis. These trade remedy data reflect the payment of AD-CVD duties by specific importer and exporter.

These data are particularly probative in the case of German imports of SSLP by [         ] and others. There is an existing AD order on line pipe from Germany. The German AD order on SSLP covers the same products subject to this investigation, but with a narrower range of SSLP. Any imports within the narrower German SSLP order would be captured by the broader SSLP like product definition in this investigation.

A review of these data reveals that [         ] did, in fact, import SSLP within the scope of the German SSLP order and, therefore, the

29

instant investigations, despite its claims otherwise. A list of such

imports is provided in Exhibit 5.  As demonstrated in Exhibit 5,

[            ], along with others, imported subject SSLP and paid

antidumping duties consistent with the rates associated with the

German SSLP AD order. These data confirm that [            ] imports of

SSPL were certainly not zero, as claimed by [         ] and accepted by

the Commission.

   While these data were not released to the parties until briefing

closed, and only released as a string PDF without any means of readily

analyzing the data, it was available to the Commission throughout the

investigation. The Commission could have utilized these data to confirm

TMK's submitted information that [         ] (and other importers) did,

in fact, import SSLP from Germany. Nor does the Commission explain

why it did not undertake a meaningful review of these data and the

factual information submitted by TMK regarding [            ]

importation of SSLP.

   The Commission's failure to utilize these data to confirm TMK's

information that [         ] imported SSLP is particularly troubling

given that the Commission was actively using the data in other

contexts. It needed to only look to the data on trade remedy data point

to confirm TMK's argument, namely, that [          ] did, in fact, import

SSLP, despite its claims otherwise. Had the Commission done so, the

material inaccuracy present in the data would not have been

perpetuated.

Since the material inaccuracy remains uncorrected, remand is

necessary. The need for finality does not outweigh a justification

seeking to protect an administrative proceeding from material

inaccuracy. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 882

F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013).

Upon remand, the Commission should seek information on the

specific imports identified in Exhibit 5 and evaluate the basis for

[          ] claims against the information presented to CBP upon

importation. In addition, the Commission must meaningfully

investigate the information presented by TMK regarding [          ]

importation of SSLP.

## VII.  The Commission's Determination Regarding the Designation of Certain Imports as Non-SSLP Was Not in Accordance with the Law

In its final determination, the Commission violated its statutory

obligation to determine the volume of merchandise imported into the

United States for use in its negligibility determination. The calculation of negligibly imports requires (1) the volume of imports corresponding to a domestic like product and (2) the volume of all such merchandise imported into the United States. The statute permits the Commission to make "make reasonable estimates on the basis of available statistics." 19 USC 1677(24)(c). "{A}n agency determination that is arbitrary is *ipso facto* unreasonable." *Ad Hoc Shrimp Trade Action Comm.*, 70 F. Supp. 3d at 1335, n.33 (citing *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)). "{A}n agency acts arbitrarily, and therefore unreasonably, when it 'entirely fail{s} to consider an important aspect of the problem' or 'offer{s} an explanation for its decision that runs counter to the evidence before {it}." *Id.* (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. 29). Additionally, support by substantial evidence must be determined on the entirety of the record, considering the evidence that detracts from the agency's conclusion. *Universal Camera Corp.*, 340 U.S. at 488. The Commission's calculation of "all such merchandise" volume was not reasonable because it relied on incomplete and inaccurate data related to the definitions of SSLP and non-SSLP.

As a result of the coordinated late declarations regarding the volume of non-SSLP imported by [                              ], the Commission sought additional information on its newly designated non-SSLP imports that these companies belatedly sought to exclude from the volume of total imports. Each company was sent a questionnaire requiring them to identify the reason that large volumes of non-SSLP were suddenly being reported. None of these companies responded with a sufficient explanation and the information provided cannot serve as a "reasonable estimate" of total imports, as required by the statute.

[              ], the company with the largest late shift from SSLP to non-SSLP, simply declared [        ] of its [        ] imported pipes to be "proprietary grades" and, therefore, excluded non-SSLP. Appx0001462-0001465. No other information was provided by [              ]. The Commission properly noted that "insufficient information" was provided to determine if these "proprietary grades' were, in fact, excludable. Appx0001465. Of the remaining [      ] standards identified by [              ], only [      ] were confirmed to be non-SSLP, while the other [      ] were designated by the Commission as "uncertain." *Id.*

Declaring a grade to be "proprietary" as the basis for its exclusion is the factual equivalent of "because I said so." And, it should have been given the same weight as "because I said so," which is to say no weight at all. [            ] is the Petitioner in this case and the issue concerning proprietary grade products persisted since the hearing. There is <u>no</u> exclusion to the scope for proprietary grades. All proprietary grade tubing is within the scope, unless it has out-of-scope dimensional characteristics, meets ASTM A335 chemical characteristics, or is made from stainless steel. [            ] made did not claim that its excluded products met any of these conditions.

   Like [          ,] [        ] unilaterally determined that its proprietary standards were outside the scope of the like product. Appx0001462. While it provided product catalogues, the Commission determined that there was [                    ] to confirm their exclusion. Appx0001462. [        ] also listed [        

       ] to justify their exclusion from the like product. Appx0001462. Again, the Commission determined that it was [            ] if such standards were excluded from the scope of the like product. Finally, [        ] claimed that [            ] was excluded and

again the Commission concluded that it was [            ] if that

specification was excluded.  Appx0001462. In summary, the

Commission was unable to confirm that any of the material deemed by

[        ] to be outside the scope of the like product, were, in fact,

outside of the parameters of the like product. Appx0001462.

   For its part, [            ] continued to deny that it imported *any* SSLP

from Germany. It identified [    ] imported standards, only three of

which could be confirmed to be excluded. Appx0001462. No information

was provided for one of the [    ] standards imported by [            ].

Appx0001462,

   The Commission asked for information on specific basis for

designating certain import volumes as non-SSLP and all three

companies refused to provide that information. Two of the companies

provided no answer at all.[4] As such, the Commission had no basis for

determining that imports from these companies were, indeed, non-

---

[4] Conversely, in its posthearing brief, TMK provided ASTM [      ] and
ASTM [      ] specifications and explained that those products imported
by [        ] should not be excluded unless the tubing does not meet
dimensional requirements of the scope.  Appx0049301-0049302. TMK
also provided BOL analysis from Datamyne showing that short
container descriptions of imports by [          ] do not reference outside
diameters exceeding 16 inches.  Appx0049304-0049305.

SSLP. Nevertheless, it unlawfully adopted that determination in its negligibility calculation. Relying on these data that the Commission staff itself found to be non-responsive does not provide the basis for a "reasonable estimates on the basis of the available statistics."

Given the lateness of [                              ] responses, and the absence of meaningful responses, the Commission's decision not to conduct a supplemental investigation was reasonable. *See Gen. Motors Corp. v. United States*, 827 F. Supp. 774, 780-781 (Ct. Int'l Trade 1993) (holding reasonable Commission's decision not to conduct supplemental investigation concerning data with insufficient evidence to make a definitive conclusion submitted one week prior to the hearing date).

However, the blind acceptance and incorporation of those obviously deficient responses was not reasonable nor does it meet the requirement that the Commission develop "reasonable estimates on the basis of available statistics." Instead, aggregate import data provide the only reasonable estimate of the volume of all such merchandise imported into the United States. Indeed, that is precisely what the Commission has done in other similar circumstances.

In *Certain Lined Paper School Supplies* ("CLPSS") *from China*, the Commission found that there were problems with the data from questionnaire responses and with official import statistics. The Commission stated that "{t}he questionnaire responses yielded a low percentage of import coverage, as the data submitted by responding importers for 2005 {was} equivalent to 39 percent of the value of total U.S. imports of CLPSS." *Certain Lined Paper School Supplies from China, India, and Indonesia (Final)*, USITC Pub. 3884, Inv. Nos. 701-TA-442-443 and 731-TA-1095-1097 (Sept. 2006). There were late filings, including a filing purporting to demonstrate that certain imports in HTS categories were, in fact, non-subject products. The Commission staff was unable to verify the accuracy of the data. As a result, the ITC concluded, "in light of the deficiencies in the questionnaire data, we rely on the official import statistics." The Commission's determination was upheld in *Navneet Publications (India) v. United States*, 32 C.I.T. 169 (2008).

In this case, there can be no dispute that there are problems with the questionnaire responses. Moreover, the Commission staff confirmed that it could not verify the basis for excluding the vast majority of

specifications excluded by [                                        ]. Like in the

CLPSS matter, import data provides the only "reasonable estimates on

the basis of available statistics." Conversely, the unverifiable and

deficient data do not provide reasonable basis for calculating total

imports. The Commission's use of unverifiable and deficient data is not

in accordance with the statutory mandate.

## VIII. The Commission's Refusal to Analyze Like Product Questions Is Not in Accordance with the Law

To determine whether Commerce's interpretation and application of

the statute is in accordance with law, the Court asks whether "Congress

has directly spoken to the precise question at issue." *Chevron U.S.A.*

*Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). The

statute in this instance is clear and *Chevron* deference is not warranted.

Given the absence of an explanation, indeed, a refusal to even address

an inquiry that was central to the disposition of this matter, this case

must be remand to the Commission with instructions that they

undertake the necessary analysis.

The Commission is charged with making "reasonable estimates on

the basis of the available statistics." 19 U.S.C. § 1677(24)(C). In

addition, the statute indicates that the Commissioners are to make an

independent determination as to what imports are to be considered. 19

U.S.C. § 1677(24)(A). ("{I}mports from a country of merchandise

corresponding to a domestic like product <u>identified by the Commission</u>

are 'negligible' if such imports account for less than 3 percent of the

volume of all such merchandise imported into the United States in the

most recent 12-month period for which data are available . . ..")

(emphasis added). In its determination, the Commission unlawfully

declined to make the necessary determination as to what imports are to

be considered as corresponding to a domestic like product. Instead, the

Commission deflected its statutory obligation over to the Department of

Commerce, an agency not tasked with making negligibility

determinations.

  The Commission summarized its position regarding the domestic like

product as follows:

> We recognize that there are conflicting party arguments as
> to the interpretation of the scope of investigation and
> whether the importers' reported out-of-scope products are in
> fact excluded from the scope. However, as noted above, on
> this record any further interpretation of the scope is a
> matter for Commerce, not the Commission.

Appx0001485.

The Commission misstates the inquiry and its statutory obligation. The Commission is independently tasked with determining which imports correspond to the domestic like product identified by the Commission. Determining what imports should be considered part of the negligibility analysis is not a scope inquiry or an issue that may be deflected to the Department of Commerce requiring further interpretation of the scope.

It is settled law that the Commission's "like product" determination is "separate and distinct" from the Department's determinations. *See, e.g.*, *Hosiden Corp. v. Advanced Display Mfrs. of America*, 83 F.3d 1561, 1567 (Fed. Cir. 1996) (citing *Torrington Co. v. United States*, 747 F. Supp. 744, 748 (Ct. Int'l Trade 1990), *aff'd*, 938 F.2d 1278 (Fed. Cir. 1991)). Thus, the Department's "class or kind" or "scope" determinations do not control the Commission's definition of the domestic industry or the like product. *See, e.g. Cleo Inc. v. United States*, 501 F. 3d 1291, 1295 (Fed. Cir. 2007).

Although the Commission must defer to the scope of an investigation as defined by the Department, the Commission itself ultimately determines the domestic product that is "like" the imported articles

identified in the scope. *See*, *e.g.*, *Torrington Co.*, 747  F. Supp. at 748–52 (affirming Commission's determination of six like products in investigations in which the Commerce Department found five classes or kinds); *see also Hosiden Corp.*, 85 F.3d at 1568 (Commission may find single like product corresponding to several different classes or kinds defined by the Commerce Department).

Thus, whether a particular product or type of product falls within the scope is not legally dispositive as to whether that product constitutes a "like product." Legally, these are two separate questions. Commission failed to meet these legal requirements in this case. The statute clearly requires that the Commission, not Commerce, identify the scope of products corresponding the domestic like product. The Commission's refusals to undertake a statutorily mandated analysis was not in accordance with the law.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court reverse and remand the Commission's injury determination concerning like product imports from the Russian Federation.

Respectfully submitted,

Dated:  March 11, 2022

_____

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

*Counsel to Plaintiff PAO TMK*

# Exhibits

1. *Scope of Germany SSLP Order*

2. *List of Imports from Germany Subject to German SSLP Order*

3. *List of Other Importers of SSLP from Germany*

4. *List of Other Importers of SSLP from Mexico*

5. *List of Imports Subject to German SSLP Order*

**Exhibit 1**

**Importers from Germany Other Than
[            ] All HTS Categories**

<u>Importer of Record</u>                <u>Quantity Imported (2019)</u>

[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
and [                                                                ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]

**Importers from Germany Other Than
[          ] All HTS Categories**

Importer of Record                    Quantity Imported (2019)

[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]
[                                                    ]

**Importers from Germany Other Than
[          ] All HTS Categories**

Importer of Record                    Quantity Imported (2019)

[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]
[                                                                    ]

**Importers from Germany Other Than**
**[                    ] All HTS Categories**


Importer of Record                    Quantity Imported (2019)

[                                                                    ]
[                                                                    ]
[                                        _____        _]
[                                                                    ]

**Exhibit 2**

**Importers from Germany Other Than**
**[          ] SSLP HTS Categories**

| Importers of Record | Quantity Imported (2019) |
|---|---|
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |
| [ | ] |

**Exhibit 3**

**Importers from Mexico Other Than
[          ] All HTS Categories**

[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                              ]
[                                                                         ]
[                                                                              ]

**Exhibit 4**

**Importers from Mexico Other Than
[         ]  SSLP HTS Categories Only**

<u>Importers of Record</u>                    <u>Quantity Imported (2019)</u>

[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]
[                                                                                                    ]

Exhibit 5

Imports of SSLP from Germany with Trade Remedy Duties Paid

| Year | Entry Month | HTS | HTS Description | Country | Customs Entry District | Importer of Record (Clean) | Consignee (Clean) | Export 2 | First Unit of Quantity (KG) | LDPV (Dollars) | Initial Trade Remedy Collections (Dollars) | LDPV+ (Dollars) | REFERENCE: Customs Importer ID Number | REFERENCE: Customs Manufacturer ID Number | REFERENCE: Customs Consignee ID Number | Trade Remedy Duties Paid | Rate Paid Against Landed Duty Paid Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

1

Exhibit 5

Imports of SSLP from Germany with Trade Remedy Duties Paid

| Year | Entry Month | HTS | HTS Description | Country | Customs Entry District | Importer of Record (Clean) | Consignee (Clean) | Export 2 | First Unit of Quantity (KG) | LDPV (Dollars) | Initial Trade Remedy Collections (Dollars) | LDPV+ (Dollars) | REFERENCE: Customs Importer ID Number | REFERENCE: Customs Manufacturer ID Number | REFERENCE: Customs Consignee ID Number | Trade Remedy Duties Paid | Rate Paid Against Landed Duty Paid Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

2

Exhibit 5

Imports of SSLP from Germany with Trade Remedy Duties Paid

| Year | Entry Month | HTS | HTS Description | Country | Customs Entry District | Importer of Record (Clean) | Consignee (Clean) | Export 2 | First Unit of Quantity (KG) | LDPV (Dollars) | Initial Trade Remedy Collections (Dollars) | LDPV+ (Dollars) | REFERENCE: Customs Importer ID Number | REFERENCE: Customs Manufacturer ID Number | REFERENCE: Customs Consignee ID Number | Trade Remedy Duties Paid | Rate Paid Against Landed Duty Paid Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

3

Exhibit 5

Imports of SSLP from Germany with Trade Remedy Duties Paid

| Year | Entry Month | HTS | HTS Description | Country | Customs Entry District | Importer of Record (Clean) | Consignee (Clean) | Export 2 | First Unit of Quantity (KG) | LDPV (Dollars) | Initial Trade Remedy Collections (Dollars) | LDPV+ (Dollars) | REFERENCE: Customs Importer ID Number | REFERENCE: Customs Manufacturer ID Number | REFERENCE: Customs Consignee ID Number | Trade Remedy Duties Paid | Rate Paid Against Landed Duty Paid Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

4

Exhibit 5

Imports of SSLP from Germany with Trade Remedy Duties Paid

| Year | Entry Month | HTS | HTS Description | Country | Customs Entry District | Importer of Record (Clean) | Consignee (Clean) | Export 2 | First Unit of Quantity (KG) | LDPV (Dollars) | Initial Trade Remedy Collections (Dollars) | LDPV+ (Dollars) | REFERENCE: Customs Importer ID Number | REFERENCE: Customs Manufacturer ID Number | REFERENCE: Customs Consignee ID Number | Trade Remedy Duties Paid | Rate Paid Against Landed Duty Paid Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

5

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 9,682 words, including text, footnotes, headings, and exhibits and excluding the table of contents, table of authorities, and counsel's signature block.

_____

Daniel Cannistra