# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

PAO TMK,

*Plaintiff,*

v.

UNITED STATES OF AMERICA,

*Defendant,*

and

UNITED STATES STEEL
CORPORATION, AND
VALLOUREC STAR, LP

*Defendant-Intervenors.*

Court No. 21-00532

***PUBLIC VERSION***

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Dated:  July 22, 2022

Daniel J. Cannistra

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902

*Counsel to Plaintiff PAO TMK*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

ARGUMENT ..................................................................... 4

    I.    The Commission's Determination Regarding Russian Negligibility Was Unlawful ................................... 4

    II.   Commission is Still Unable to Provide a Reasoning for Its Data Choices Concerning Germany and Mexico ............ 14

        A.    Import from Germany ................................... 15

        B.    Import from Mexico ..................................... 16

        C.    Imports from Ukraine ................................... 19

    III.   The Commission Declined to Define the Domestic Like Product ................................................. 20

    IV.   CNIF Data Is Relevant and Detracts from the Commission's Determination Despite Covering Only Part of the Negligibility Period ........................... 22

    V.    TMK Raised All Arguments Briefed Before the Commission ............................................... 23

CONCLUSION .................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Celanese Chems. Ltd. v. United States*,
   31 C.I.T. 279 (Ct. Int'l Trade 2007) ................................................... 4, 5

*Cleo Inc. v. United States*,
   501 F. 3d 1291 (Fed. Cir. 2007) ........................................................ 21

*Hosiden Corp. v. Advanced Display Mfrs. of America*,
   83 F.3d 1561 (Fed. Cir. 1996) .......................................................... 21

*Qingdao Taifa Group Co., Ltd.*, v. United States, Slip Op. 09-83 (Ct.
   Int'l Trade 2009) .............................................................................. 29

STATUTES

19 U.S.C. § 1671b ................................................................................. 4

19 U.S.C. § 1671d ................................................................................. 4

19 U.S.C. § 1673b ................................................................................. 4

19 U.S.C. § 1677 ...................................................................... 4, 11, 20

19 U.S.C. § 1677e ............................................................................... 12

28 U.S.C. § 2637 ................................................................................. 28

Plaintiff PAO TMK ("TMK") hereby submits this reply brief in support of its Rule 56.2 motion for judgment on the agency record contesting the negligibility determination and the resulting injury determination by the U.S. International Trade Commission (the "Commission").

## INTRODUCTION

The Commission's negligibility determination in its investigation is a mess created by the untimely submissions of [

]. In its prehearing staff report, the Commission calculated Russian imports to be negligible. Appx0045604-0045605.  In its post-hearing staff report, the Commission calculated Russian imports to be negligible. Appx0001282-0001283; Appx0001404-0001423. In its determination regarding the Czech Republic, the Commission calculated Russian imports to be negligible.  APPX0001461.  In between each of these calculations, numerous "alternate" calculations were made by the Commission and memos were released outlining the significant data concerns arising from the untimely and clearly erroneous submission by [                              ]. Appx0001440-0001465; Appx0001519-Appx0001528. The Commission even added a section to

1

its staff report entitled "methodology concerns" to address the myriad of problems in the data. Finally, in its Russian determination, the Commission found that imports from Russia were not negligible. In doing so, the Commission utilized a methodology that was not used in any previous negligibility calculation.

In Plaintiff's opening brief, we demonstrated that the Commission committed three errors in reaching its determination that imports from the Russian Federation were not negligible. First, the methodology utilized by the Commission was arbitrary. Second, the Commission's belated determination that [          ] was the only importer of Mexican SSLP from Mexico and [          ] was the only importer of SSLP from Germany is unsupported by substantial evidence. Third, the Commission abrogation of its responsibility to undertake its statutorily mandated negligibility analysis was unlawful.

Defendant attempts to explain its determination by simply stating that it used the "best information available." Using the best information available, however, is not a license to arbitrarily cherry pick discreet datapoints. Indeed, the use of best information is a statutory process.

The information at issue is the volume of non-subject imports. This information was specifically requested from of [

            ]. The only reason that this information would not be on the record would be if [                              ] withheld the information, failed to provide the information, impeded the investigation, or provided information that could not be verified. The Commission made no affirmative finding which statutory factor permitted it to resort to the best information available. Moreover, the Commission failed to explain if it was rejecting information provided by [                              ] in its entirety, or only in piecemeal. And, if rejected information in piecemeal, what is the rational for accepting pieces of their submission while rejecting others.  We, and the Court, are left to guess.  Furthermore, even if such a finding was made, the Commission failed to corroborate the secondary information it used in its application of best information.

# ARGUMENT

## I.    The Commission's Determination Regarding Russian Negligibility Was Unlawful

The statute requires that an investigation be terminated with a no injury determination if imports of the subject merchandise are found to be negligible. 19 U.S.C. § 1677(24)(A)(i); *see also* 19 U.S.C. §§ 1671b(a)(1),1671d(b)(1), 1673b(a)(1), and 1673d(b)(1)). Imports of merchandise corresponding to a domestic like product are negligible if they account for less than three percent of the volume of all such merchandise imported into the United States in the most recent twelvemonth period for which data is available that precedes the filing of the petition. 19 U.S.C. § 1677(24)(A)(i). The Commission "may make reasonable estimates on the basis of available statistics" of the relevant import levels for purposes of deciding negligibility. *Id*. § 1677(24)(C). The Commission may use either official government import data or any other set of data, such as importer questionnaire data, to determine negligibility. *Celanese Chems. Ltd. v. United States*, 31 C.I.T. 279, 288 (Ct. Int'l Trade 2007) ("*Celanese Chems*"). The Commission, however, is bound to rely on the "best information available" contained in the

4

record. *Id.* at 291 (citing *Calabrian Corp. v. United States*, 794 F. Supp. 377, 386 (Ct. Int'l Trade 1992).

In *Celanese Chems*, the domestic producer challenged the Commission's negative injury determination. In that case, the Commission relied on importer questionnaire data to calculate the volume of subject imports (*i.e.*, imports from Taiwan) and unadjusted official import data to calculate the volume of non-subject imports (i.e., imports form non-subject countries). *Id.* at 288-293. However, the Commission's administrative record contained U.S. Census Bureau data for determining the volume of subject imports from Taiwan which the Commission did not consider. The Court remanded the case to the Commission on this issue because it was "not clear that the Commission {} relied on the best information available. *Id.* at 291. Additionally, the non-subject import data used by the Commission included out-of-scope products. This Court remanded the case to the Commission because it had "failed to provide a satisfactory explanation for its decision" not to adjust the official import data for non-subject imports. *Id.* at 293. Neither Defendant nor Defendant-Intervenors discuss *Celanese Chems* in their response briefs before the Court.

5

In the instant case, the iterations and methodological changes

adopted by the Commission are summarized as follows:

**Pre-Hearing Staff Report**
Date: 2/19/2021

Basis for import data:
Calculated based on U.S. official import statistics which are
adjusted to exclude out-of-scope products. Official U.S.
import statistics for Russia were adjusted to remove [      ]
out-of-scope products. IV-2

Germany: U.S. official import statistics
Ukraine: U.S. official import statistics
Mexico: U.S. official import statistics

**Post-Hearing Staff Report**
Date: 3/23/2021

Basis for import data:
Country-specific quantities are computed by removing the
volume of reported out-of-scope imports from the given
country from the total U.S. imports from that country based
on official import statistics for the primary HTS statistical
reporting numbers.

Germany: U.S. official import statistics minus non-subject
imports
Ukraine: U.S. official import statistics
Mexico: U.S. official import statistics minus non-subject
imports

**Supplemental Memorandum for Staff Report**
Date: 3/31/2021

Basis for import data:

U.S. imports in the twelve-month period preceding the filing of the petition consistent with part IV of the staff report but additionally excluding [          ] and [          ] reported out-of-scope merchandise, July 2019 through June 2020.

Germany: U.S. official import statistics minus [          ] and [          ] reported out-of-scope.
Ukraine: U.S. official import statistics
Mexico: Numbers are the positive reported SSLP pipe reported by [          ] given their assertion that they are the only producer of these products in Mexico.

## **SSLP Pipe Opinion**
Date: 4/19/2021

Views of the Commission outlines that Germany statistics will use [          ] reported in-scope merchandise and Mexico will use [          ] reported in-scope merchandise.

## **Staff Report**
Date: 7/23/2021

Basis for import data:

Data for Czechia, Korea, and Ukraine are based on official U.S. import statistics, Data for Russia, are based on USITC questionnaire data from [              ] Importer Questionnaire at question II-3b; data for Germany are from [          ] Importer Questionnaire at question II-3b; and data for Mexico are from [          ] Importer Questionnaire at question II-3b, and data for all other sources are based on official U.S. import statistics deducting reported out-of-scope imports from [          ], [              ], [              ], and [          ] Importer Questionnaires at question II-3c.

Germany: [          ] reported in-scope merchandise.
Ukraine: U.S. official import statistics

Mexico: [          ] reported in-scope merchandise.

As noted above, on February 19, 2021, in the Pre-Hearing Staff Report, the Commission based its calculations on U.S. official import statistics for Russia, adjusted to exclude imports of out-of-scope products. Appx0045604-0045605. For Germany, Ukraine, and Mexico, the Commission relied on import statistics. On March 23, 2021, in the Post-Hearing Staff Report, the Commission made two different types of calculations. First, the Commission estimated import volumes based on official import statistics for Germany, Ukraine, and Mexico. In its second calculation version, the Commission adjusted the official import statistics for non-subject imports from Germany and Mexico but used official import statistics for Ukraine. In this report, the Commission noted methodological concerns for adjusting based on importer questionnaire responses of [                         ].

On March 31, 2021, the Commission issued a supplemental memorandum where it adjusted the earlier estimations and provided three types of estimations. Appx0001449-0001465. In the first version, the Commission estimated the volumes by relying on U.S. official import statistics for Germany and Ukraine but relied on [        ]

reported data for in-scope products. In the second version, the Commission used official import statistics for Ukraine and Mexico but adjusted official data for Germany based on out-of-scope imports reported by [           ]. In the third version, the Commission adjusted data for Germany to remove out-of-scope imports reported by [           ] in questionnaire responses, used official import statistics for Ukraine, and used data by removing out-of-scope merchandise reported in the same questionnaire response for which the Commission had earlier expressed concerns.

On the same day, March 31, 2021, the Commission issued a Revision Memorandum for Staff report where it further adjusted the official import data from Germany based on out-of-scope imports reported by [           ] *and* [           ], and the Commission relied on official import statistics for Mexico but adjusted for out-of-scope imports reported by [           ]. Appx0001440-0001448. The Commission then released another supplemental memorandum for staff report on April 16, 2021 (dated March 31, 2021), with the same estimations as in the Revision Memorandum. Appx0001519-0001528.

On April 19, 2021, the Commission issued its opinion where it revised its negligibility estimations again.  Appx0001466-0001518. The Commission based its estimations on official import statistics for Czechia, Korea, and Ukraine. It revised the estimations for imports from Germany. This time, the Commission declined to rely on out-of-scope imports reported in the importer questionnaires to adjust the official import statistics because [                    ] had reported substantially greater volume of total imports than the official import statistics. Instead, the Commission relied on imports of in-scope products reported by Vallourec. For imports from Mexico, the Commission used in-scope volumes reported by [          ]. On July 23, 2021, the Commission issued its final staff report which followed the same methodology described in the April 19 opinion. Appx0002123-0002150.

The information at issue in this case is the volume of non-subject imports. This information was specifically requested from of [

                    ]. Appx0048489-0048678; Appx0029515-0029562; Appx0029657-0029704; Appx0029754-0029755; Appx0033427-0033427; Appx0033741-0033805, Appx0040063-0040126; Appx0046252-0046313;

Appx0048489-0048550; Appx0048551-0048614, Appx0048615-0048678;

Appx0052109; Appx0052115-0052178.

Prior to the use of adverse facts available, one of the following

findings must be made:

(1) necessary information is not available on the record, or

(2) an interested party or any other person—

(A) withholds information that has been requested by the administering authority or the Commission under this subtitle,

(B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,

(C) significantly impedes a proceeding under this subtitle, or

(D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title.

Therefore, the only reason that this information would not be on the

record would be if [                              ] withheld the

information, failed to provide the information, impeded the

investigation, or provided information that could not be verified. The

Commission made no affirmative finding which statutory factor

permitted it to resort to the best information available. Moreover, the

Commission failed to explain if it was rejecting information provided by [                                ] in its entirety, or only in piecemeal. And, if rejected information in piecemeal, what is the rational for accepting pieces of their submission while rejecting others.  We, and the Court, are left to guess.

Even if such a finding was made, the Commission failed to corroborate the secondary information it used in its application of best information.  19 U.S.C. § 1677e(c) requires corroboration as follows:

> (c) Corroboration of secondary information
>
> > (1) In general
> >
> > > Except as provided in paragraph (2), when the administering authority or the Commission relies on secondary information rather than on information obtained in the course of an investigation or review, the administering authority or the Commission, as the case may be, shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal.

The Commission's determination is void of any effort to corroborate the secondary information used in its negligibility determination. The Commission clearly had the ability to corroborate [

]  information regarding non-subject imports and additional

subject imports based on proprietary Customs data. In fact, it

undertook precisely that analysis in other contexts:

- "{D}ue to consistent reporting from the preliminary phase of these investigations (in regards to [      ]) and general alignment with proprietary Customs data as well as early reporting of out-of-scope imports by these firms with monthly data submitted upon request of the Commission." Appx0001420.

- "Upon further inspection, [                            ] suggest that [                      may have grossly overestimated import volumes of product that entered under the primary HTS statistical reporting numbers for SSLP pipe from Germany by [                ] in 2018." Appx0001421.

- "Other firms, and all firms that provided earlier responses, reported out-of-scope imports that entered under the primary HTS statistical reporting numbers for SSLP pipe in 2018 had a [                ] short ton absolute difference in reported imports compared to [                        ]." Appx0001421-0001422.

Throughout this proceeding, TMK urged such corroboration against

customs data:

- "{T}he Commission should request the use of such Section 232 exclusions from CBP to make sure in-scope mechanical, boiler, condenser and heat exchanger tubing is not removed from the total SSLP volume of imports." Appx0049301.

- "TMK does not have access to the usage of these exclusions, but the Commission should request such information from CBP." Appx0049303.

- "The Commission should calculate total subject import volume making due adjustment only for '{n}on-SSLP pipe imports reported by [                          ] due to consistent reporting from the preliminary phase of these investigations …and general alignment with proprietary Customs data.'" Appx0057301.

Therefore, the commission's determination regarding Russian negligibility was unlawful because it was made without the required analysis for best information and based on the uncorroborated data.

## II.   Commission is Still Unable to Provide a Reasoning for Its Data Choices Concerning Germany and Mexico

The Commission's reply relies on the deference that it is afforded. However, such deference is not a carte blanche to adopt factual finding that are contradicted by record evidence. The Commission portrays its data choices as complex, hoping to convince the Court to defer to the complexity. However, TMK challenges a simple, narrow issue. Was there a reason to rely on data of in-scope imports reported only by a single importer from Mexico and a single importer from Germany?  The answer is a no.

A.    _Import from Germany_

Concerning Germany, the Commission's final calculations relied

on in-scope imports reported by only [                    ]. The Commission

switched to this methodology after parties had already submitted

comments. Prior to its final analysis, the Commission was adjusting the

official import statistics for reported out-of-scope imports by [            ]

and [                ] (i.e., capturing all imports as a starting point, then

adjusting the data as appropriate).

As an initial matter, the Commission concedes that [            ]

and [            ] accounted for only [    ] percent of total imports from

Germany under the HTS numbers. Def. Br. at 26.  Despite that over [

] percent of data would go unaccounted in such a close negligibility

determination in terms of the percentage, the Commission still relied on

the import data provided by [                ].  Thus, the Commission

concedes our factual argument that the record evidence does not

support the conclusion that [            ] is the only importer of subject

merchandise.

In fact, there is no factual basis for that conclusion anywhere in

the record. The Commission cites no testimony, no data and no

secondary source for reaching the conclusion that [Vallourec] is the only importer of subject merchandise.

To the contrary, TMK submitted in its post-hearing brief bills of lading and data on 232 exclusion requests indicating that there was at least one other importer of subject merchandise from Germany.  It also provided testimony at the hearing on the same point. TMK then encouraged the Commission to review CBP data to confirm the presence of other exporters. Had it done so, it would have readily concluded that there were other importers of subject merchandise.  Furthermore, [

       ], which even paid antidumping duties on SSLP imports into the U.S., definitively indicated that [          ] was not the only importer of subject merchandise from Germany.

### B.   *Import from Mexico*

Concerning Mexico, Defendant cites to Appx0001487 to support why it presumed that there was a single importer from Mexico.  In a footnote, the Commission stated the following:

> {B}ecause [       ] reports in its brief that its affiliate
> Mexican producer is the only producer of seamless pipe
> in Mexico, we find that reported imports of SSLP pipe
> from Mexico in [          ] U.S. importer questionnaire

16

> response constitute the best available information for
> measuring the volume of SSLP pipe from Mexico and
> do not rely on official import statistics.

Appx0001487.  That [              ] is affiliated with the sole SSLP pipe

producer in Mexico does not rule out that the same producer exported

into the United States through other importers.  In its brief before the

Court, Defendant cited to Appx0001487 for the claim that "[          ]

reported that it alone *imports* from that Mexican producer . . .."

(emphasis added). However, that claim is nowhere at Appx0001487.

Instead, [        ] stated that there was purportedly only one *producer*.

The Commission is now trying to cast that to mean the same as if there

was only one importer.  Additionally, this justification demonstrates

how selectively the Commission relied on new factual information that

it received in a brief rather than prior to the preliminary determination

when the record closed for new factual information. There is no

rationale connecting the [          ] statement cited by the Commission

to the Commission's decision to rely on data reported solely by one

importer.  Additionally, record evidence contradicts this statement.  As

explained in Plaintiff's opening brief, with respect to Mexico, there were

[    ] other importers of pipe in the applicable HTS categories.  Pl. Br. at 17.

Additional evidence detracts from the Commission's finding that [           ] was the only importer.  In its Posthearing brief, [        ] explained that some of non-SSLP imports from [        ] affiliates in third countries were made by [        ] and not by [      ]. Appx0050876-0050894.  However, [        ] did not provide HTS data of excluded out-of-scope imports. During the investigation, TMK examined imports by [        ] on Datamyne and submitted these data to the Commission. These data show that imports with [        ] as consignee match the description of SSLP and are classified under HTS 7304.19. The petitioners admitted that "7304.19 are explicitly limited to line pipe." [                ] Posthearing Brief at 11.  Thus, not only the Commission did not have any basis to find that [        ] is the only importer for products produced by [            ], but other data demonstrate the contrary.

### C.    Imports from Ukraine

Defendant-Intervenors attempt to justify the Commission's

decisions concerning data in [                    ] importer questionnaire

response for Ukraine. Defendant-Intervenors claim that the

Commission's decision to rely on unadjusted import statistic for

Ukraine was not inconsistent with the decisions to rely on importer

questionnaire responses. The alleged justification is that although the

importer questionnaire responses in both scenarios displayed

misreporting or inconsistencies with official import statistics, [

] reported no out-of-scope data. Defendant-Intervenors state,

"the reason the Commission used unadjusted public import statistics for

Ukraine instead of [

].” This

argument is based on a distinction without a difference.

And, therefore, argue Defendant Intervenors, the Commission was

justified in relying on import statistics alone. The inconsistency that

neither the Commission nor Defendant Intervenors see or fail to

acknowledge is that there are data deficiencies in both scenarios but the

Commission "cured" one data but not the other. The Commission

19

selectively relied on one data source more than the other. When there are reliability concerns about data, the entire data is deemed unreliable unless types of data are independent of each other and can be segregated. The Commission's decision to rely on the lower value of official import statistics from Ukraine implicitly concerns the following rationale. Overreported in-scope imports implies underreported out-of-scope imports. Nonetheless, the Commission did not imply the same principle when it came to data from [                              ]. That is, overreported out-of-scope imports also imply underreported in-scope imports. Additionally, reliability is an issue that concerns the data source itself because of the apparent misreporting. Thus, if the Commissions decided to refuse [                    ] responses altogether, it should have done the same for the other importers as well.

### III.   The Commission Declined to Define the Domestic Like Product

The Commission cannot delegate its duty to define domestic like product by tagging along the scope and then deferring to commerce. The Commission is required to analyze negligibility of "imports from a country of merchandise corresponding to a domestic like product

*identified by the Commission.*"  19 U.S.C. § 1677(24)(A) (emphasis added).   The Commission unlawfully declined to make the necessary determination as to what imports are to be considered as corresponding to a domestic like product. Instead, the Commission deflected its statutory obligation over to the Department of Commerce, an agency not tasked with making negligibility determinations.

The Commission can adopt the definition of the scope identified by Commerce.  The Commission is tasked to come up with the definition, and nothing in the statute prohibits it from adopting any definition. However, whether a product meets the definition adopted by the Commission, *i.e.*, determining whether certain imports should or should not be considered as part of the negligibility calculations, is still the Commission's obligation – not Commerce's.

It is settled law that the Commission's "like product" determination is "separate and distinct" from the Department's determinations. *See*, *e.g.*, *Hosiden Corp. v. Advanced Display Mfrs. of America*, 83 F.3d 1561, 1567 (Fed. Cir. 1996) (citing *Torrington Co. v. United States*, 747 F. Supp. 744, 748 (Ct. Int'l Trade 1990), *aff'd*, 938 F.2d 1278 (Fed. Cir. 1991)).  The Department's "class or kind" or "scope"

21

determinations do not control the Commission's definition of the
domestic industry or the like product. *See*, *e.g. Cleo Inc. v. United
States*, 501 F. 3d 1291, 1295 (Fed. Cir. 2007).

The Commission failed to determine whether the following
imports meet the domestic like product definition it adopted, and,
therefore, whether those imports should be considered in the
negligibility analysis.

## IV.   CNIF Data Is Relevant and Detracts from the Commission's Determination Despite Covering Only Part of the Negligibility Period

Both Defendant and Defendant-Intervenors argued that CNIF
data is irrelevant or does not undermine the Commission's negligibility
because it does not cover the entire negligibility period.  Def. Int. Br. at
12-13. This argument is flawed because the evidence of inconsistencies
between CNIF data and importer questionnaire responses is there
regardless. While more contemporaneous CNIF data would paint a
better picture of the extent of the inconsistency, the existing data
already demonstrates the inconsistency between CNIF data and
importer questionnaire responses which the Commission did not
investigate further. Instead, the Commission dismissed the CNIF data,

22

and continues to do so before the Court.  Thus, the Commission's

determination is not based on substantial evidence.


## V.     TMK Raised All Arguments Briefed Before the Commission

Defendant and Defendant-Intervenor argue that TMK failed to

exhaust arguments based on CNIF data**;** failed to exhaust that **[**

**]** imported in scope products from Germany**;** failed to exhaust

arguments that Mexico and Germany questionnaires should have been

sent to more importers. The Commission argues that TMK waived any

arguments based upon the CNIF data because TMK failed to comment

on the CNIF data after the data were made available to the parties.

As a preliminary matter, both the Commission and Defendant-

Intervenor miscast TMK's argument. TMK's position is that subject

imports are misstated in the final negligibility calculation and the CNIF

data confirms that misstatement. The CNIF merely confirms that

factual arguments that TMK advanced in its pre-hearing brief, at the

Commission's hearing, in its post-hearing brief and in its final

comments. Neither at the administrative level nor in its brief does TMK

contest the CNIF data.

Throughout the investigation, TMK implored the Commission to reference customs data (CNIF dta) and raised issued related to that data throughout the proceeding. At the hearing, TMK "encourage{ed} the Commission to also seek out additional information from {CBP} regarding the use of these particular exclusions."  Appx0048854.  TMK explained that referencing CBP data can confirm the presence of subject imports "because any time a steel exclusion is, in fact, used, that same importer must declare it under the particular Chapter 99 code. And we believe that when the commission does so, it will confirm that each of these companies primarily import subject product within the enumerated HTS codes as subject merchandise is defined by the scope of this proceeding." Appx0048854-0048855.

With respect to [        ], their importation of subject products was raised in TMK's prehearing brief.  Moreover, Beneler's subject imports and the need to compare questionnaire data with customs data, was further raised at the hearing:

> Consider {[        ]}. They've clearly requested 3 exclusions for subject merchandise and subject pipe imported from Germany, and a complete review of their import profile provides evidence of high volumes of subject merchandise.

> We provide specific examples not only attached to our prehearing brief, not only examples of specific products 8 for which exclusion were requested, but also, based on bills of lading, what imports were actually entering the United States during the period of investigation."

Appx0048854.  Then, as already noted above, TMK argued in its post hearing and final submissions that the Commission should confirm that there were non-subject imports from Germany and Mexico from entities other than [          ] and [            ].  The Commission ignored all of these pleas, despite sitting on at least part of the requested data and never releasing it to the parties in a useful matter.

Moreover, the Commission never took the position that there was one importer from Mexico and Germany until after the period for commenting was closed.  Indeed, the ITC's methodology through its final APO release on March 25, 2021 utilized a method for calculating imports from Germany and Mexico based on <u>total</u> imports from those countries, then adjusting based on attestations of imports of non-subject imports within the applicable HTS categories.  At no point prior to the deadline for submitting comments did the ITC calculate imports from Mexico based exclusively on [            ] imports and from Germany based exclusively on reported imports by [            ]

Only on April 19, 2022 (i.e., 20 days <u>after</u> final comments were due, was the following notation was suddenly inserted in the negligibility tables

For Mexico data, [

].

Appx0001454.  And, at no point prior to April 19, 2022 was the applicable short tons of imports of [          ] from Mexico utilized by the Commission its negligibility calculations. Instead, prior to that point, all import calculations for Mexico were premised on total Mexican imports as the starting point.

Likewise, the factual finding that [          ] is the only producer in Mexico and, presumably by extension, the only importer or SSLP from Mexico was not in any negligibility calculation during the comment period. Instead, this factual determination was simply slipped into the final staff report after the comment period was closed. We also note, coincidently, that on the same day the ITC released correspondence confirming that one of [          ] customers, [          ] imported [          ] produced pipe.  This confirms what was shown in the propriety

Customs data, namely, that [          ] is not the only importer of [

] produced pipe.

    Likewise, at no point prior to its determination did the

Commission calculate imports from Germany based on [          ]

import data.  Despite presenting various scenarios prior to the deadline

for submitting final comments, it was not until the final staff report was

released on July 23, 2021 that the following footnote suddenly appeared

in the negligibility tables:

> Note.--Data for Czechia, Korea, and Ukraine are based on
> official U.S. import statistics, Data for Russia, are based on
> USITC questionnaire data from [          ] Importer
> Questionnaire at question II-3b; data for Germany are from [
>          ] Importer Questionnaire at question II-3b; and
> data for Mexico are from [          ] Importer Questionnaire
> at question II-3b,and data for all other sources are based on
> official U.S. import statistics deducting reported out-of-scope
> imports from [          ], [          ], [
> ], and [          ] Importer Questionnaires at
> question II-3c.

Appx0002134.  At no point prior to July 23, 2021, which was nearly four

months after final comments were due, did the Commission utilize data

for Germany based on [          ] questionnaire.  Prior to that point,

like Mexico, all negligibility calculations began with <u>all</u> imports and

captured all importers. There was nothing to contest in this regard.

Inexplicably, the separation of Germany and Mexico also disappeared from the final negligibility tables.   All prior tables clearly separated out Mexican and German imports so that the parties had a clear understanding of the source.

There cannot be waiver of an issue that was not at issue at the administrative level.  First, TMK did argue before the Commission that the volume of imports from Russia are negligible.  Appx30241-302043; Appx0049932-49937.  This was the main issue that TMK argued.  TMK argued extensively that the importer questionnaire data reported by [

] were not consistent with official import statistics on the record or data on the record based on Datamyne (database of import-export trade).  Appx0049931-49946.

As noted by this Court, a respondent is not required to file a case brief or rebuttal brief to exhaust its administrative remedies where it had "received all the remedy it sought from the preliminary determination." The same principal applies to preliminary determines in Staff reports.  In the pre-hearing staff report, Russia was found to have negligible imports and all imports from Germany and Mexico were captured in the calculations. In the post-hearing staff report, Russia

28

was again found to have negligible imports, and again all imports from

Germany and Mexico were captured in the calculations.  It was only

<u>after</u> the comment period was closed that the Commission changed its

methodology and determined that only [          ] imported from

Germany and [       ] from Mexico.

Therefore, the exhaustion doctrine does not preclude the court's

review of TMK's claims. The Court "shall, where appropriate, require

the exhaustion of administrative remedies." 28 U.S.C. § 2637(d).  "A

party, however, may seek judicial review of an issue that it did not raise

in a case brief if {the agency} did not address the issue until its final

decision, because in such a circumstance the party would not have had

a full and fair opportunity to raise the issue at the administrative

level." *Qingdao Taifa Group Co., Ltd., v. United States*, Slip Op. 09-83

(Ct. Int'l Trade 2009) (citing *LTV Steel Co. v. United States,* 985 F.

Supp. 95, 120 (CIT 1997)).

Here, the Commission's Pre-Hearing Staff Report found that

imports from Russian were negligible on February 19, 2021.

Appx0045604-0045605.  TMK submitted its post-hearing brief on March

11, 2021, relying on the Pre-Hearing Staff Report.  TMK highlighted

issues concerning the later-revised importer questionnaire data but otherwise supported the Pre-Hearing staff report and had no reason to argue against those findings.  Appx00492887-0049308.  On March 23, 2021, the Commission's Post-Hearing Staff Report found that disregarding the later-revised importer questionnaire responses would result in imports from Russia to be negligible.  APPX0001409-001410. This report also provided that adjusting the official import statistic based on the later-revised data by [                              ] would results in       ] percent of total imports by quantity.  At issue was the subtraction of non-subject imports from total imports, not the declaration that [          ] and [            ] were the only importers from Germany and Mexico.

The Commission's Final Staff Report acknowledged "substantial methodological concerns" with the importer questionnaire responses which at times "grossly overestimated" out-of-scope import volumes from a certain non-subject country. Appx0001421-0001422.  It was not until March 31, 2021, that the Commission relied on [

] revised data for out-of-scope and [              ] assertion that it was the only importer of in-scope] merchandise.  The final

comments were due two days earlier on March 29, 2021.  Therefore,

TMK did not have a fair opportunity to specifically bring forth

inconsistencies with other data sources (e.g. CNIF data) reported by

those three importers.  TMK's argument concerning the duties paid

under the *SD SSLP from Germany* is also based on the CNIF data.


## CONCLUSION

For the reasons set forth above, Plaintiff respectfully urge this Court

to reject the arguments of Defendant and Defendant-Intervenors in

their response briefs.


Respectfully submitted,

Dated:  July 22, 2022

Daniel J. Cannistra

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

*Counsel to Plaintiff PAO TMK*

31

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 5,394 words, including text, footnotes, headings, and exhibits and excluding the table of contents, table of authorities, and counsel's signature block.

_____

Daniel Cannistra