*NON-CONFIDENTIAL VERSION*

**UNITED STATES COURT OF INTERNATIONAL TRADE**
Before the Honorable M. Miller Baker, Judge

| | |
|---|---|
| PAO TMK, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| UNITED STATES, ) | Court No. 21-00532 |
| ) | |
| *Defendant,* ) | |
| ) | Business Proprietary |
| *and* ) | Information Deleted from |
| ) | Brackets [ ] |
| UNITED STATES STEEL ) | |
| CORPORATION, AND VALLOUREC ) | |
| STAR, LP, ) | |
| ) | |
| *Defendant-Intervenors.* ) | |
| ) | |

**DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFF'S PROPOSED REMAND ORDER**

Roger B. Schagrin
Elizabeth J. Drake
SCHAGRIN ASSOCIATES
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700

*Counsel for Vallourec Star, LP*

Thomas M. Beline
Mary Jane Alves
CASSIDY LEVY KENT (USA) LLP
900 19th St. N.W., Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel for United States Steel Corporation*

Date:  February 9, 2023

*NON-CONFIDENTIAL VERSION*

# TABLE OF CONTENTS

I. The Commission calculated reasonable estimates for imports from all countries…....………………………………………………………1

II. The Commission reasonably relied on in-scope imports from Germany and Mexico……………………………………………………4

III. The Commission did analyze proprietary and foreign specifications and reasonably determined not to rely on importers' claims regarding such specifications……………….……7

IV. Conclusion…………………………………………………………...9

*NON-CONFIDENTIAL VERSION*

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1677(24)(C) ..............................................................................2, 4

**Legislative Materials**

Statement of Administrative Action to the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 3773 ................................................................................2

*NON-CONFIDENTIAL VERSION*

Defendant-Intervenors United States Steel Corporation ("U. S. Steel") and Vallourec Star, LP ("Vallourec") respectfully submit this response to the proposed remand order and accompanying supplemental brief filed by Plaintiff PAO TMK ("TMK") in the above-captioned action. For the reasons below, this Court should reject TMK's proposed remand order and affirm the final determination of the U.S. International Trade Commission ("Commission") on seamless carbon and alloy steel standard, line, and pressure pipe ("SSLPP") from Czechia, Korea, Russia, and Ukraine, including its finding that imports from Russia were not negligible. The Commission's negligibility determination is supported by substantial evidence and in accordance with law, and it should be upheld in its entirety.

I. **The Commission calculated reasonable estimates for imports from all countries**

TMK claims that the Commission failed to meet its statutory obligation by not accounting for imports by all importers. TMK Supp. Br. at 2 (ECF Nos. 66 & 67). In support of its argument, TMK claims that the Commission failed to account for [ ] importers from Germany and Mexico identified in the Customs Net Import File ("CNIF") data that did not return questionnaires to the Commission. *Id.* Contrary to

1

*NON-CONFIDENTIAL VERSION*

TMK's claims, the Commission did account for imports from all countries, but it was constrained by the data available to it at the time of its determination. Congress recognized that the Commission may not have complete questionnaire data and therefore explicitly permitted the Commission to rely on "reasonable estimates on the basis of available statistics" for its negligibility determinations in the absence of such data. 19 U.S.C. § 1677(24)(C). *See also* Statement of Administrative Action to the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1, 856 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 4188. Here, the "available statistics" included: (1) public import statistics (which all parties agree included out-of-scope imports); (2) in-scope imports reported in questionnaires (which would not include any data for importers who did not return questionnaires); or (3) public import statistics adjusted for out-of-scope imports reported in the questionnaires.

As noted in Section III, below, the Commission rejected the last option for imports from Germany, Mexico, and Russia because the reported out-of-scope data was found to be unreliable. As for the first option, using public import data for the three countries would result in

2

*NON-CONFIDENTIAL VERSION*

Russia being above the negligibility threshold, Appx1798, a result TMK would likely oppose. The Commission's reliance on the second option was thus reasonable, as the amounts of reported in-scope imports for each of the three countries were [



]. Def. Resp. at 22, 24-26 (ECF Nos. 44 & 45). As noted in Section II, below, this in-scope data was also [



].

TMK further claims that the Commission failed to select a uniform calculation methodology because it relied on in-scope imports reported by [                    ] but declined to rely on in-scope imports reported by [         ]. TMK Supp. Br. at 2. The different approaches were warranted by the different facts concerning each importer. In-scope imports reported by [



]. Def. Resp. at 25-26.

[          ] reported in-scope data, however, substantially exceeded

3

public import data, and so was not reliable. *Id.* at 31-32. Thus, the Commission's approach was consistent, as it relied on the best "available statistics" for each country to reach "reasonable estimates" of in-scope imports for the purposes of analyzing negligibility. *See* 19 U.S.C. § 1677(24)(C). The Commission's determination should therefore be upheld.

**II. The Commission reasonably relied on in-scope imports from Germany and Mexico**

TMK argues that the Commission must demonstrate why the unreliability of out-of-scope imports reported in importer questionnaires for Germany and Mexico did not undermine the reliability of in-scope imports reported by the same importers. Proposed Order at 2 (ECF No. 65); TMK Supp. Br. at 3-4. The importer's questionnaire had two separate questions: (1) question II-3b asked for imports of SSLPP by country for the 12-month negligibility period; and (2) question II-3c asked for imports of non-SSLPP under the scope HTS numbers during the same period. Appx33198.

[






]. *See*

4

Appx33754, Appx48627, Appx52126 ([                    ]). *See also*

Appx40074, Appx48562 ([                    ]). When [


                                        ]. *See id.* [



                                                          ]. *See* Appx49649,

Appx48641, Appx52140 ([                         ]). *See also* Appx40091,

Appx48579 ([                    ]). In addition, the [


] the CNIF data (which included both in-scope and out-of-scope imports). Def. Resp. at 25-26.[1]

TMK did not challenge the data reported in question II-3b below, and the Commission had no reason to question this data. The fact that importers [



---

[1]   [

            ]. *See* Appx33427 ([
        ]). *See also* Appx46261, Appx48498.

]. The in-scope data [

]. It was therefore reasonable for the Commission to rely on this in-scope data.

TMK also argues that the record did not support the Commission's determination that there was only one importer each for Germany and Mexico. Proposed Order at 2; TMK Supp. Br. at 4. As noted in Section I, above, the mere fact that an importer appeared in CNIF data does not indicate that it is an importer of subject merchandise given the inclusion of out-of-scope imports in the CNIF data. Moreover, regarding [      ], the bill of lading data, Section 232 exclusions, and data regarding imports under another order do not undermine the Commission's conclusion that [

]. None of this information demonstrated that [

]. *See* Def. Resp. at 29-30, 41-43.[2]

For all of these reasons, the Court should affirm the Commission's reliance on in-scope imports reported by [               ] as reasonable estimates of imports from Germany and Mexico.

### III. The Commission did analyze proprietary and foreign specifications and reasonably determined not to rely on importers' claims regarding such specifications

TMK claims the Commission failed to conduct its own analysis regarding whether certain proprietary and foreign specifications were outside of the scope of the investigation, as certain importers claimed, and instead "simply accepted each importer's claim." TMK Supp. Br. at 5-7. This argument is without merit. The Commission did analyze these claims, indicating for each importer that made such claims – [                                   ] – whether the information of record supported their claims or not. Appx1462-1465. The Commission assessed that [

---

[2] We note that TMK provided no citation to the other order nor any analysis supporting its assertion that any imports under that order must also be within the scope of this investigation. TMK Br. at 29-31 (ECF Nos. 33-2 & 34-2).

7

]. *Id.*

As a result of this analysis, the Commission decided not to accept any of these importers' claims regarding alleged out-of-scope product produced to proprietary and foreign specifications. The Commission stated:

> We do not have a reasonable basis on this record for determining some of the products to be properly reported in these certified questionnaire responses as outside the scope but not others.

Appx1855. Because of these discrepancies, the Commission declined to rely on these reported out-of-scope imports and instead relied only on reported in-scope imports from Germany, Mexico, and Russia. Appx1856-1857, Appx2172. *See also* Def. Resp. at 22. In short, contrary to TMK's assertions, the Commission did conduct its own analysis of the record evidence regarding claimed out-of-scope imports. Based on this analysis, the Commission determined that the evidence was not reliable, and it thus declined to accept the importers' claims. The Commission's determination not to rely on these claimed out-of-scope imports was reasonable and supported by substantial evidence, and it should therefore be upheld.

## IV. Conclusion

For the reasons above, this Court should reject TMK's proposed remand order and uphold the Commission's determination in its entirety.

Respectfully submitted,

| | |
|---|---|
| /s/ Elizabeth J. Drake | /s/ Thomas M. Beline |
| Roger B. Schagrin | Thomas M. Beline |
| Elizabeth J. Drake | Mary Jane Alves |
| SCHAGRIN ASSOCIATES | CASSIDY LEVY KENT (USA) LLP |
| 900 Seventh St. N.W., Suite 500 | 900 19th St. N.W., Suite 400 |
| Washington, D.C. 20001 | Washington, D.C. 20006 |
| (202) 223-1700 | (202) 567-2300 |
| | |
| *Counsel for Vallourec Star, LP* | *Counsel for United States Steel Corporation* |

Date: February 9, 2023

9

*NON-CONFIDENTIAL VERSION*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response to TMK's proposed order contains 1,493 words and therefore complies with the word limitation set forth by the Court. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: February 9, 2023     /s/ Elizabeth J. Drake
                                Elizabeth J. Drake