*PUBLIC VERSION*

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

Court No. 21-00532

**PAO TMK,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant,*

and

**UNITED STATES STEEL CORPORATION
AND VALLOUREC STAR, LP,**

*Defendant-Intervenors.*

**DEFENDANT UNITED STATES INTERNATIONAL TRADE
COMMISSION'S RESPONSE TO PLAINTIFF'S
PROPOSED ORDER AND SUPPLEMENTAL BRIEF**

| | |
|---|---|
| MADELINE R. HEEREN | DOMINIC L. BIANCHI |
| Attorney for Defendant | General Counsel |
| Office of the General Counsel | Telephone (202) 205-3061 |
| U.S. International Trade Commission | |
| 500 E Street, SW | ANDREA C. CASSON |
| Washington, DC  20436 | Assistant General Counsel |
| Telephone (202) 708-1529 | for Litigation |
| Fax: (202) 205-3111 | Telephone (202) 205-3105 |

**DATED: February 9, 2023**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................... iii

I.  Plaintiff Erroneously Restricts the Commission's Discretion to Make Reasonable Estimates ............................................................. 1

II. Substantial Evidence Supports the Commission's Use of Importers' Data to Measure Imports from Russia, Mexico, and Germany ............................................... 4

III. The Commission Conducted its Own Analysis of Out-of-Scope Imports Which Supported the Commission's Determination to Accept the Classification of Imports ........................................................ 6

IV. Conclusion ................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arlanxeo USA LLC v. United States*,
389 F. Supp.3d 1330 (Ct. Int'l Trade 2019),
*aff'd*, 819 F. App'x 925 (Fed Cir. 2020) ............................................... 1, 2

*Nippon Steel Corp.* v. *United States*,
345 F.3d 1379 (Fed. Cir. 2003) ........................................................ 2

*Full Member Subgroup of Am. Inst. of Steel Constr., LLC v.
United States*,
547 F. Supp.3d 1211 (Ct. Int'l Trade 2021),
*appeal pending*, No. 22-1176 (Fed. Cir. 2022) ..................................... 7

**Statutes**

19 U.S.C. § 1677(24)(C) .................................................................. 1, 2

**Legislative History**

Statement of Administrative Action for the Uruguay Round
Agreements Act, H.R. Doc. No. 103-316, Vol. 1 (1994) .................... 1, 6

Defendant U.S. International Trade Commission hereby responds to Plaintiff's Proposed Order (ECF65) and Supplemental Memorandum (ECF66).

## I. Plaintiff Erroneously Restricts the Commission's Discretion to Make Reasonable Estimates

The Commission's evaluation of negligibility was consistent with Congress' acknowledged authorization to make "reasonable estimates on the basis of available statistics." 19 U.S.C. § 1677(24)(C). *See Arlanxeo USA LLC v. United States*, 389 F. Supp. 3d 1330, 1333 (Ct. Int'l Trade 2019), *aff'd*, 819 F. App'x 925 (Fed. Cir. 2020). TMK suggests that the Commission must account for every short ton of imports corresponding with the domestic like product, SuppMem1-2, but overlooks the reality that the "Commission may not have access to either complete questionnaire data or official import statistics conforming exactly to the Commission's like product(s) designations." SAA at 856.

Without taking into account the differences in the reliability of the data collected from each questionnaire respondent, Plaintiff would also direct the Commission to use a one-size-fits-all methodology for

measuring imports. SuppMem1-2.[1] The statute, however, does not require the Commission to use the identical methodology to calculate imports from each source. Rather, the statute directs the Commission to make "reasonable" estimates, 19 U.S.C. § 1677(24)(C), the basis for which could naturally vary depending on what constitutes the most reliable information in the record regarding imports from each individual source. In *Arlanxeo*, this Court upheld a Commission negligibility determination which utilized different data sets to measure imports and also did not capture 100 percent of imports based on basket category HTS numbers. 389 F. Supp. 3d at 1333.

Plaintiff's proposed order would require the Commission to ignore the most accurate information for measuring imports from certain countries and prioritize the least common denominator of data, which in this case would be the broad unadjusted official import statistics. In other words, the Commission would be required to rely on broader data that is substantially less accurate in order to use a uniform methodology for all countries. Because importer questionnaire data are

---

[1] Irrespective of plaintiff's proposal, whether or not to re-open a record on remand falls within the Commission's discretion. *Nippon Steel Corp. v. United States*, 345 F.3d 1379, 1382 (Fed. Cir. 2003).

not available for Czechia and Korea, the Commission had only the unadjusted official import statistics to use for these imports. Appx1487. Plaintiff's proposal would likewise require the use of unadjusted official import statistics for all other countries, despite record evidence confirming that the official data for several of those countries includes substantial volumes (presumably more than the [      ] short tons) of out-of-scope imports reported during the negligibility period. *Compare* Appx1415 *with* Appx1411.

Further, the new proposal contradicts Plaintiff's argument during the investigation beseeching the Commission to use TMK's in-scope importer questionnaire data to measure imports from Russia. Appx49295-49296. Plaintiff's prior argument implied that the Commission should not use a uniform methodology given that in-scope importer questionnaire data were not available for other countries.

Moreover, a remand requiring uniform use of unadjusted official import statistics as now proposed by Plaintiff would be futile; a calculation using these statistics across the board shows that imports from Russia would continue to exceed the negligibility threshold. Appx1415 (Table D-6). In fact, this approach results in imports from

3

Russia accounting for an even larger percentage of imports, 5.1 percent. *Id.*

## II. Substantial Evidence Supports the Commission's Use of Importers' Data to Measure Imports from Russia, Mexico, and Germany

While paying lip service to the substantial evidence standard of review, TMK asks for a remand essentially ordering the Commission to reweigh the evidence. SuppMem3-4. The record supports the Commission's determination that [      ] was the only importer of in-scope products from Mexico. Specifically, Tenaris's sworn statement in its posthearing brief indicated that [                                                            ], and [      ] was the only importer of its in-scope products to the United States, as the other importer, [      ], only imported out-of-scope products. Appx50887, Appx50891, Appx52719. Tenaris's statement was largely consistent with CNIF data, as [      ] imports accounted for [   ] percent of imports from Mexico entering under HTS basket categories that include out-of-scope imports.[2] DefBr (ECF41) 22,25-30.

---

[2] The Commission relied on accurate revised importer data from [      ] that did not exceed CNIF data. On March 23, 2021, [      ] revised its reported imports from Mexico. Appx52718-52727. Staff were unable to incorporate these revisions into their report that was issued the same day.

4

Business Proprietary Information
Subject to Protective Order Redacted

For Germany, the Commission found that [          ] was the only *reported* importer of in-scope products, and relied on the data as the best available information for measuring imports from Germany. Appx1486. While the CNIF data indicated the importers that responded to the importer questionnaires accounted for [    ] percent of total imports from Germany, no other importer questionnaires reported in-scope imports from Germany, nor was there evidence that [          ] or any other importer imported in-scope products. DefBr22.

Neither the Commission nor the parties observed any discrepancies with [          ] in-scope imports from Germany, which were the only in-scope imports reported. Subsequently, when [          ] and [          ] revised their reported out-of-scope imports from Germany, the Commission observed discrepancies and so declined to rely on revised out-of-scope import data to measure imports from Germany. Appx1486. However, [          ] in-scope import volume did not change. *Compare* Appx33754 *with* Appx48627.

Nothing in the record indicates that importers other than those discussed above imported in-scope imports from Mexico or Germany. The CNIF data does not show otherwise, because those data include

5

out-of-scope imports. DefBr25-30. The Commission reasonably relied on the in-scope importer questionnaire data for Russia, Mexico, and Germany, and made reasonable estimates on the basis of available statistics, as required by the statute.

### III. The Commission Conducted its Own Analysis of Out-of-Scope Imports, which Supported the Commission's Determination to Accept the Classification of Imports

The Commission relied on reasonable inferences from the evidence to determine the products that were included and excluded from the scope and used those inferences to make reasonable estimates on the basis of available statistics. "In general, the Commission makes determinations by weighing all of the available evidence regarding a multiplicity of factors relating to the domestic industry as a whole and by drawing reasonable inferences from the evidence it finds most persuasive." SAA at 869.

The Commission conducted an extensive review of importers' out-of-scope imports. The evidence did not support the Commission reclassifying out-of-scope imports as in-scope products. After [       ], [       ], and [       ] revised their out-of-scope imports on March 3, 2021, and [     ] revised its out-of-scope imports on March 10, 2021, the

6

Commission requested additional information from importers that reported out-of-scope merchandise. Appx1409. The Commission requested importers provide HTS classifications, technical specifications, and any industry specifications for out-of-scope imports. Appx52187-52217; Appx52718-52727; Appx52184; Appx52110-52114; Appx48704-48706. Importers responded to the Commission's requests prior to the record closing on March 25, 2021.

The Commission thoroughly reviewed the record evidence provided by importers, including TMK's Datamyne data and 232 scope exclusion requests. The Commission also gathered additional information through a public search of pipe producer websites, standard webpages, and product catalogs. *See, e.g.*, ECF24 at Docs732519, 737426. Throughout this process, the Commission compared the product standards and specifications to the express language of the scope.[3] However, some foreign and proprietary standard information were not publicly available, not available in English, or insufficiently detailed. The

---

[3] This Court has upheld a Commission determination to include certain data in a domestic like product coextensive with the scope based on the Commission's best understanding of Commerce's scope. *Full Member Subgroup of Am. Inst. of Steel Constr., LLC v. United States*, 547 F. Supp. 3d 1211, 1219 (Ct. Int'l Trade 2021), *appeal pending,* No. 22-1176 (Fed. Cir. 2022).

7

Business Proprietary Information
Subject to Protective Order Redacted

Commission also examined whether products meeting certain standards were in-scope under CBP CROSS rulings. The Commission summarized its analysis for each importers' out-of-scope product in the supplemental staff report. Appx1462-1465. For many product standards, the Commission determined that the products were clearly excluded from the scope. For other product standards, the product standard language was vague, or there was insufficient information to determine whether all merchandise produced to the product standard were excluded based on the express scope language. The Commission made reasonable inferences based on the record evidence and decided to accept the classification of all out-of-scope products, because none of the products were clearly included in Commerce's scope. Appx1474 (n.31).

The Commission considered the Datamyne bill of lading and the scope exclusion request documentation, but did not find they undermined [        ] sworn statement that all of its imports were out-of-scope products. DefBr29-30. The Datamyne data failed to describe products in a meaningful way (*i.e.*, identifying product specifications). Appx49311-49313. Additionally, the 232 scope exclusions documentation did not provide any information concerning

8

[ ] imports. Appx49357-49372. That [ ] sought scope exclusions does not establish that it imported those products. Furthermore, there is no evidence that the pipe from Germany scope overlaps or is inclusive of the scope of this investigation. DefBr41-43.

## IV. Conclusion

For the above reasons and those presented in the Commission's brief and at oral argument, the Court should reject Plaintiffs' claims and affirm the Commission's determinations.

Respectfully submitted,

*/s/Dominic L. Bianchi*
Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ Madeline R. Heeren*
Madeline R. Heeren
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-1529
Madeline.heeren@usitc.gov

9

*Attorneys for Defendant United States International Trade Commission*

Date:  February 9, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures paragraph 2(B)(1)(c) and (2) and this Court's Order dated December 15, 2022, I hereby certify that the attached **DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S RESPONSE TO PLAINTIFF'S PROPOSED ORDER AND SUPPLEMENTAL BRIEF**, contains 1,498 words, according to the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010).

        /s/ Madeline R. Heeren

Madeline R. Heeren
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-1529
Date: February 9, 2023      Madeline.heeren @usitc.gov