PUBLIC VERSION

Slip Op. 23-150

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

Court No. 21-00532

PAO TMK,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

UNITED STATES STEEL CORPORATION and VALLOUREC STAR, LP,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

**OPINION**

[The court grants Plaintiff's motion for judgment on the agency record in part and denies it in part.]

Dated: October 12, 2023

*Daniel J. Cannistra* and *Pierce J. Lee*, Crowell & Moring LLP of Washington, DC, argued for Plaintiff. With Mr. Cannistra on Plaintiff's opening brief was *John Anwesen*.

*Madeline R. Heeren*, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commis-

sion of Washington, DC, argued for Defendant. With her on the brief was *Andrea C. Casson*, Assistant General Counsel for Litigation.

*Elizabeth J. Drake*, Schagrin Associates of Washington, DC, argued for Defendant-Intervenor Vallourec Star, LP. With her on Defendant-Intervenors' brief was *Roger B. Schagrin* for Vallourec Star and *Thomas M. Beline* and *Mary Jane Alves*, Cassidy Levy Kent (USA) LLP of Washington, DC, for United States Steel Corporation.

*Baker*, Judge: In this case, a Russian producer of seamless pipe challenges the International Trade Commission's conclusion that such imports from that country are non-negligible for purposes of a material injury determination. For the reasons below, the court sustains the Commission's decision in part and remands in part.

I

To combat unfair trade practices, the Tariff Act of 1930, as amended, provides a mechanism for imposing remedial duties on imported merchandise dumped into U.S. markets (sold for less than normal value in the home market), 19 U.S.C. § 1673(1), or that foreign governments subsidize, *id.* § 1671(a)(1). Before imposing antidumping (for the former) or countervailing (for the latter) duties, the Department of Commerce must investigate whether dumping is occurring or a subsidy

is being provided, while the ITC investigates whether imports materially injure domestic producers. If both agencies find in the affirmative, Commerce imposes duties as applicable. *See id.* § 1673; *id.* § 1671(a).

In evaluating material injury, the Commission must "cumulatively assess the volume and effect of imports of the subject merchandise from all countries," if such imports compete with each other and with domestic like products. *Id.* § 1677(7)(G)(i)(I), (II). The ITC refers to this requirement as "cumulation."

The statute, however, provides an exception to cumulation. In making its material injury determination, the ITC must disregard imports of a subject country's merchandise that are "negligible." *Id.* §§ 1671b(a)(1), 1673b(a)(1). Subject to an exception not relevant here, "imports from a country corresponding to a domestic like product identified by the Commission are negligible" if they "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available." *Id.* § 1677(24)(A)(i). For these calculations, the ITC "may make reasonable estimates on the basis of available statistics." *Id.* § 1677(24)(C). If the Commission finds negligibility, then the investigation of that country terminates, and imports from that nation escape duties. *See id.* §§ 1671b(a)(1), 1673b(a)(1), 1677(7)(G)(ii)(II).

II

In 2020, Vallourec Star, LP, a domestic producer, petitioned for the imposition of antidumping and countervailing duties on seamless pipe imports from Czechia, South Korea, Russia, and Ukraine. Appx1001. Vallourec alleged that such imports materially injured it and other domestic producers. Appx15651; *see* 19 U.S.C. §§ 1671, 1673. After the Commission made a preliminary determination of material injury, Appx32642–32682, Commerce began investigations under 19 U.S.C. §§ 1671d and 1673d. *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czechia, Korea, Russia, and Ukraine*, 85 Fed. Reg. 53,398 (ITC Aug. 28, 2020), Appx1002.

In that investigation, the Department issued producer, importer, purchaser, and foreign producer questionnaires to various entities, including PAO TMK, a Russian producer. Appx34049, Appx34063. These questionnaires asked respondents to separately identify the quantity of their seamless pipe imports from each of the subject countries, as well as Mexico and Germany, from 2018–2020. Appx33200–33217.

The ITC then used the questionnaire data along with official statistics to determine whether the seamless pipe imports from any subject country were below

the statutory negligibility threshold of three percent.[1] This exercise required the estimation of the volume of seamless pipe imports from all countries during the 12-month "negligibility period" preceding the petition—July 2019 through June 2020. *Id.* The prehearing staff report used official import statistics under the primary HTS numbers during that period, deducting any reported merchandise outside the scope of the investigation. Appx45599 n.3. This report found that imports of Russian seamless pipe were below the statutory negligibility threshold during the relevant period. Appx45605.

Three respondents then revised their questionnaire responses by recategorizing some of their pipe imports from non-subject countries as *non*-seamless. Appx48489–48678. Based on the revised questionnaire responses, the Commission calculated that Russia accounted for [[    ]] percent of imports during the preceding 12-month period, just barely above the statutory negligibility standard of "less than 3 percent . . . ." Appx2191 (citing 19 U.S.C. § 1677(24)(A)(i)). The Commission issued its determination of material injury shortly afterward. *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea,*

---

[1] The Commission compiled official import statistics from the U.S. Census Bureau for each of the relevant Harmonized Tariff Schedule (HTS) numbers during the period of investigation. ECF 36, at 17–18; Appx2134. These statistics are public data. ECF 36, at 18 n.5.

*Russia, and Ukraine*, 86 Fed. Reg. 46,882 (ITC Aug. 20, 2021), Appx2228.

### III

TMK brought this suit under 19 U.S.C. § 1516a(a)(2)(B)(i) to challenge the Commission's finding that Russia was a non-negligible source of subject imports. *See* ECF 10 (complaint). The court has subject-matter jurisdiction over such actions under 28 U.S.C. § 1581(c).

Vallourec and U.S. Steel Corporation intervened as defendants supporting the Commission. *See* ECF 18 and 23. TMK then moved for judgment on the agency record. ECF 33 (confidential); ECF 34 (public). The ITC (ECF 44, confidential; ECF 45, public) and the intervenors (ECF 39, confidential; ECF 40, public) responded and TMK replied (ECF 48, confidential; ECF 49, public). The court heard oral argument and received a more detailed proposed remand order from TMK (ECF 65) and supplemental briefing. *See* ECF 67 (TMK); ECF (71) (agency); ECF 69 (defendant-intervenors).

In § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached

the same decision on the same record—rather, it is whether the administrative record as a whole permits the Commission's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

In addition, the ITC's exercise of discretion in § 1516a(a)(2) cases is subject to the default standard of the Administrative Procedure Act, which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Solar World Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that in § 1516a cases brought under section 516A of the Tariff Act of 1930, APA "section 706 review applies since no law provides otherwise") (citing 28 U.S.C. § 2640(b)).

IV

A

1

TMK challenges the Commission's failure to "capture all imports from Germany and Mexico in its negligibility analysis." ECF 34-2, at 15. Even though Customs Net Import File data (Customs data) available to the ITC demonstrated that several companies imported seamless pipe from both Germany and Mexico, *see id.* at 16; *see also* ECF 33-2, Exs. 1–4, the Commission relied solely on questionnaire data from Company A[2] as to Germany and Company B[3] as to Mexico. Appx2134.

The Commission and the defendant-intervenors do not dispute that the Commission ignored the Customs data contradicting the agency's determination that only Company A imported seamless pipe from Germany and Company B imported such pipe from Mexico. Instead, they argue that TMK waived this issue by not raising it in the company's final comments. *See* ECF 45, at 40–41, 43–44 (government).

TMK replies, however, that "the Commission never took the position that there was one importer from

---

[2] "Company A" refers to [[      ]].

[3] "Company B" refers to [[      ]].

Mexico and Germany until after the period for commenting was closed." ECF 49, at 25; *see also id.* at 25–29. The court agrees: Because up until the final decision the ITC's calculations were based on *all* imports from Mexico and Germany, the company had no opportunity to challenge the Commission's course change. Waiver thus does not apply. *See LTV Steel Co. v. United States*, 985 F. Supp. 95, 120 (CIT 1997) (where a "plaintiff had no opportunity to raise the issue at the administrative level," "exhaustion doctrine [will] not preclude judicial review").

Because the ITC failed to address the Customs data contradicting its determination that only Company A imported seamless pipe from Germany and only Company B imported such pipe from Mexico, the court remands for the Commission to do so. "[A]n agency acts arbitrarily, and therefore unreasonably, when it . . . 'offers an explanation for its decision that runs counter to the evidence before it.' " *Ad Hoc Shrimp Trade Action Comm. v. United States*, 70 F. Supp. 3d 1328, 1335 (CIT 2015) (cleaned up and citing *Motor Vehicle Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

2

As to imports from Germany, TMK further argues that the Commission arbitrarily accepted Company

A's questionnaire response while rejecting Company C's.[4] ECF 34-2, at 18–21. This contention fails.

The ITC observed that the combined in-scope and out-of-scope imports from Germany reported by Companies A and C in their *revised* questionnaires exceeded the total amount stated in the official statistics during the negligibility period. Appx1486. Unable to resolve these discrepancies, the Commission explained that it would not rely on these new responses. Appx1559. Instead, the agency opted to rely on these companies' *initial* questionnaire responses. *Id.*

Company A's initial response disclosed in-scope imports from Germany. Appx48627. Company C's, on the other hand, did not. Appx48498. The ITC explained that official import data contradicted only Companies A and C's revised questionnaire data—not their initial responses. Appx1486. The agency therefore did not act arbitrarily in relying on the initial questionnaire responses.

That said, TMK submitted evidence of in-scope imports that it contends calls Company C's initial questionnaire response into doubt. *See* ECF 34-2, at 28–30. It is undisputed that the Commission did not meaningfully address this evidence, even though it conflicts with the agency's decision. *Cf. Ad Hoc Shrimp*, 70 F. Supp. 3d at 1335 ("Importantly, the substantiality of

---

[4] Company C refers to [[      ]].

the evidence must take into account whatever in the record fairly detracts from its weight.") (cleaned up and quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). On remand, the ITC must do so, for it cannot simply avert its gaze from evidence that contradicts its determination.

B

TMK challenges the Commission's calculation of import data from Argentina and Italy. ECF 34-2, at 21–25. The company contends that the ITC's reliance on data reported by Company C is not supported by substantial evidence because it conflicts with certain unspecified data. *See id.* at 22–23 (citing Appx2163). As the government observes, "the basis for Plaintiff's calculations of purported total imports from Italy and Argentina is unclear," as the cited Appendix page "contains no reference to such data." ECF 45, at 33 n.9. TMK made no effort on reply to salvage its incomplete argument about Argentine and Italian imports, so the court treats it as abandoned.

C

TMK also takes aim at the Commission's estimate of seamless pipe imports from Ukraine, ECF 34-2, at 25–28, which relied on unadjusted official import statistics. Appx1560. In so doing, TMK argues, the agency

ignored a questionnaire response from Company D.[5] That response claimed an amount of seamless pipe imports from Ukraine that [[                    ]] Appx1487. TMK characterizes this approach as arbitrary and capricious because the Commission accepted questionnaires from Companies A, B,[6] and C but not from Company D. ECF 33, at 26–28.

This argument glosses over that certain questionnaire responses conflicted with official statistics while others did not. This occurred in only two instances: with Company D's questionnaire response from Ukraine, and with Companies A and C's *revised* questionnaire responses from Germany. Appx1486–1487. The ITC rejected using the data from any of these three questionnaires, choosing instead to rely on unadjusted official statistics for Ukraine and on Company A's and Company C's *initial* questionnaire responses for Germany. *Id.*

Because the ITC has discretion to select its methodology when calculating negligibility, it acted arbitrarily only if it "offer[ed] insufficient reasons for

---

[5] Company D refers to [[                    ]].

[6] Although TMK asserts that the Commission expressed "methodological concerns" with Company B's *Mexican* data, ECF 34-2, at 25, the former's brief cites no record support for this proposition. Thus, the court disregards the reference to Company B in TMK's challenge to the Commission's calculation of Ukrainian import data.

treating similar situations differently." *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1337 (CIT 2017) (quoting *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1323 (CIT 2014)). The Commission's explanation for its treatment of questionnaire responses from Company A and C on the one hand, and Company D on the other, suffices because the situations were materially different. The initial questionnaire responses from Companies A and C did not conflict with official statistics, whereas Company D's response did.

### D

Finally, TMK argues that "the Commission unlawfully declined to make the necessary determination as to what imports are to be considered as corresponding to a domestic like product." ECF 34-2, at 39. The company cites the following statement:

> We recognize that there are conflicting party arguments as to the interpretation of the scope of investigation and whether the importers' reported out-of-scope products are in fact excluded from the scope. However, as noted above, on this record any further interpretation of the scope is a matter for Commerce, not the Commission.

*Id.* (quoting Appx1485).

TMK's characterization of the cited passage misses the mark. The Commission "define[d] a single domestic like product of all [seamless] pipe, coextensive with the scope" set by Commerce. Appx1474. No party contested that definition. *Id.*

The statute required the ITC to calculate negligibility using "imports from a country of merchandise corresponding to a domestic like product identified by the Commission." 19 U.S.C. § 1677(24)(A)(i). Keeping with its definition of "domestic like product," the Commission calculated negligibility "using imports from subject and nonsubject sources that correspond to Commerce's scope of investigations." Appx1484. The ITC committed no legal error in so doing.

TMK's challenge to the Commission's purported failure to determine what imported products correspond to domestic like products in effect repackages its immediately preceding argument that the ITC "blindly accepted" the questionnaire responses of Companies A, B, and C. *See* ECF 34-2, at 31–38. First, the ITC did no such thing, at least in regard to the responses of Companies A & C as previously discussed. More importantly, insofar as the ITC relied on the questionnaires, it's not for the court to reweigh that evidence on its own merits. *See AL Tech Specialty Steel Corp. v. United States*, 27 CIT 1791, 1802 (2003) ("[T]he credibility of sources is largely a matter within the province

of the Commission, as the trier of fact.").[7] Rather than identifying any legal error or even asserting a legal argument, TMK's quarrel is with how the ITC weighed the questionnaire responses of Companies A, B, and C, and that weighing is the Commission's exclusive province.

* * *

For the foregoing reasons, the court grants TMK's motion for judgment on the agency record in part and sustains the Commission's determination in part. A separate remand order will issue.

Dated: October 12, 2023  /s/ *M. Miller Baker*
       New York, NY  Judge

---

[7] Of course, and as discussed above, even if the ITC reasonably relied on the questionnaire responses *on their own terms*, it does not excuse the agency's failure to address evidence that contradicts those responses.