*NONCONFIDENTIAL VERSION*

---

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

_____

Court No. 21-00532

_____

**PAO TMK,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant,*

**and**

**VALLOURER STAR, L.P., and UNITED STATES
STEEL CORPORATION,**

*Defendant-Intervenors.*

---

**DEFENDANT UNITED STATES INTERNATIONAL TRADE
COMMISSION'S CORRECTED COMMENTS ON REMAND
DETERMINATION**

---

**MADELINE R. HEEREN**
Attorney for Defendant
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Telephone (202) 708-1529
Fax (202) 205-3111

**DOMINIC L. BIANCHI**
General Counsel
Telephone (202) 205-3061

**ANDREA C. CASSON**
Assistant General Counsel
    for Litigation
Telephone (202) 205-3105

**DATED:  July 2, 2024**

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

## TABLE OF CONTENTS

Table of Authorities......................................................................................iii

Glossary ..........................................................................................................v

I.    The Commission Fully Complied with the Court's
      Remand Instructions.............................................................................1

      A.    The Commission Responded Fully to the Court's
            Instructions Reconsidering the Data Relied Upon
            for Measuring In-Scope Imports from Germany
            and Mexico in Light of Customs Data ......................................... 4

      B.    The Commission Meaningfully Addressed the
            Evidence Proffered by TMK Regarding
            [          ] Imports from Germany ................................ 12

II.   The Commission Fully Complied with the Court's
      Instructions to Reconsider its Findings in Light of
      Certain Existing Evidence on the Record.......................................13

III.  Conclusion ...........................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*ArcelorMittal France v. AK Steel Corp.*,
  786 F.3d 885 (Fed. Cir. 2015) ................................................................ 9

*Delverde, SrL v. United States*,
  21 CIT 1294, 989 F. Supp. 218 (1997) .................................................. 8

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ............................................................ 15

*Goss Graphics Sys., Inc. v. United States*,
  22 CIT 983, 33 F. Supp. 2d 1082 (1998), *aff'd*, 216 F.3d
  1357 (Fed. Cir. 2000) .......................................................................... 11

*Int'l Indus. v. United States*,
  311 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) ...................................... 10

*Navneet Educ., Ltd. v. United States*,
  Slip Op. 23-191, 2023 WL 9018387 (Ct. Int'l Trade Dec.
  29, 2023) ............................................................................................... 14

*NEC Corp. v. Dep't of Comm.*,
  22 CIT 1108, 36 F. Supp. 2d 380 (1998) .............................................. 8

*Nevinnomysskiy Azot v. United States*,
  32 CIT 642, 565 F. Supp. 2d 1357 (2008) .......................................... 11

*New Am. Keg v. United States*,
  2024 WL 379968 (Ct. Int'l Trade Jan. 31, 2024) ......................... 16, 18

*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006) ............................................................ 11

*Zhaoqing New Zhongya Aluminum Co. v. United States*,
  38 CIT 203, 961 F. Supp. 2d 1346 (2014) .......................................... 17

iii

# <u>TABLE OF AUTHORITIES (cont'd)</u>

**Statutes**                                                                **Page(s)**

19 U.S.C. § 1677(24)(C) ......................................................................... 8, 14

19 U.S.C. § 3512(d) ................................................................................... 8

**Other Authorities**

Statement of Administrative Action to the Uruguay Round
   Agreements Act,
   H.R. Doc. No. 103-316, vol. 1 (1994) ................................................... 8

# GLOSSARY

| Term | Definition |
| --- | --- |
| all other sources | all countries with the exception of subject countries (*i.e.*, Czechia, Korea, Russia, and Ukraine) and two specific nonsubject countries (*i.e.*, Mexico and Germany) |
| CNIF or Customs Data | Customs Net Import File data |
| Commission | U.S. International Trade Commission (Defendant) |
| HTS | Harmonized Tariff Schedule |
| in-scope imports | imports that correspond with the scope definition |
| ITC | U.S. International Trade Commission (Defendant) |
| negligibility period | the 12-month period preceding the filing of the petition—July 2019 through June 2020 |
| out-of-scope imports | imports that do not correspond with the scope definition but entered under the HTS numbers identified by Commerce |
| POI | Period of investigation—January 1, 2018 through December 30, 2020 |
| SAA | Statement of Administrative Action accompanying the Uruguay Round Agreements Act |
| SSLPP or SSLP pipe | seamless carbon and alloy steel standard, line and pressure pipe (subject product) |
| TMK | PAO TMK (Plaintiff) |
| URAA | Uruguay Round Agreements Act |

Defendant U.S. International Trade Commission responds to the comments filed by plaintiff PAO TMK, which challenge certain aspects of the Commission's remand determinations in *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe ("SSLPP" or "SSLP pipe") from Russia*, Inv. Nos. 701-TA-655 and 731-TA-1531. The Commission's remand determinations fully respond to the Court's remand instructions, and are supported by substantial evidence and otherwise in accordance with law. We respectfully request that this Court affirm the Commission's remand determinations.

## I.    The Commission Fully Complied with the Court's Remand Instructions

By opinion and order dated October 12, 2023, this Court remanded the Commission's final determinations with regard to Russia as set out in the Commission's final determinations in *SSLPP from Czech Republic (Czechia)*, Inv. No. 731-TA-1529 (Final), USITC Pub. No. 5183 (Apr. 2021) ("Leading Views") (ECF 24-1, 25-1), and *SSLP Pipe from Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1530-1532 (Final), USITC Pub. No. 5222 (Aug. 2021) ("Trailing Views") (ECF 24-2, 25-2). *PAO TMK v. United States*, Court No. 21-00532, Slip Op. 23-150 at 9-11 (Ct. Int'l Trade Oct. 12, 2023) (ECF 77); and Remand

**BUSINESS PROPRIETARY INFORMATION**
*SUBJECT TO PROTECTIVE ORDER REDACTED*

Order (Oct. 12, 2023) (ECF 78). The Court affirmed the Commission's methodology for measuring imports from Ukraine and from All Other sources (*e.g.,* Argentina and Italy). Slip Op. 23-150 at 11-13. The Court remanded the Commission's calculations of imports from Germany and Mexico for further consideration and explanation. Slip Op. 23-150 at 8-11. Specifically, the Court directed the Commission to "reconsider … its calculation of in-scope imports from Germany and Mexico and its related findings that there was only one importer each for Germany and Mexico in light of Customs data to the contrary." Remand Order at para. 2; *see also* Slip Op. 23-150 at 8-9. The Court also directed the Commission to "reconsider … its calculation of in-scope imports from Germany by Company C {[ ███████ ]} in view of evidence to the contrary proffered by TMK." Remand Order at para. 2. With respect to the second instruction, the Court explained that the proffered evidence purportedly casts doubt on Company C's [ ██████ ] initial U.S. importer questionnaire response. *See* Slip Op. 23-150 at 10-11.

In the remand determinations, the Commission explained that it was adopting its original findings, analysis, and conclusions in their entirety with respect to those issues either affirmed by the court or not subject

BUSINESS PROPRIETARY INFORMATION
SUBJECT TO PROTECTIVE ORDER REDACTED

to appeal, including domestic like product, domestic industry, cumulation, legal standards, conditions of competition, volume, price, and impact. Appx0060119-0060136; Appx0060059-0060074. Additionally, in light of the Court's instructions, the Commission incorporated its findings, analysis, and conclusions from the original determinations concerning the calculation of in-scope imports from Russia, Czechia, Korea, Ukraine, and All Other sources.[1] Appx0060127-0060128.

On remand, the Commission fully complied with the Court's remand instructions. As discussed further below, the Commission reconsidered its calculation of in-scope imports from Germany and Mexico in light of Customs data and meaningfully addressed the evidence proffered by TMK concerning [          ] imports from Germany. Appx0060069-0060073. Upon reconsideration, the Commission found that [          ] (Company A's) and [          ] (Company B's) reported

---

[1] The Commission calculated negligibility using official import statistics to measure in-scope SSLPP imports from Czechia, Korea, and Ukraine, adjusted official import statistics that subtracted out-of-scope imports reported in the importer questionnaires to measure imports for the All Other category of sources, and in-scope imports reported in the importer questionnaires to measure in-scope SSLPP imports from Russia. Appx0060068; Appx0002191 (n.9) (citing Appx0002134).

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

in-scope imports were reasonable estimates for estimating in-scope

SSLPP imports from Germany and Mexico, respectively. Appx0060071-

0060072.

The Commission added these volumes to the most reasonable

available estimates for each other source, as sustained by the Court, to

arrive at the denominator for the negligibility calculation.

Appx0060073. Subject imports of SSLPP from Russia accounted for

[ ▮ ] percent of total imports, and thus, the Commission found subject

imports from Russia were not negligible. Appx0060073; Appx0060136.

### A. The Commission Responded Fully to the Court's Instructions Reconsidering the Data Relied Upon for Measuring In-Scope Imports from Germany and Mexico in Light of Customs Data

The Court instructed the Commission to "reconsider … its

calculation of in-scope imports from Germany and Mexico and its

related finding{s} that there was only one importer each for Germany

and Mexico in light of Customs data to the contrary." Remand Order at

1.

In compliance with the Court's instruction, the Commission

reconsidered the data used to calculate in-scope imports from Germany

and Mexico in light of the Customs data. Upon this examination, the

BUSINESS PROPRIETARY INFORMATION
SUBJECT TO PROTECTIVE ORDER REDACTED

Commission explained that the Customs data did not alter its findings that [ ▮▮▮▮ ] (Company A)—the only responding importer that reported in-scope imports from Germany, was the only known importer from Germany, and that [ ▮▮▮▮ ] (Company B)—the only responding importer that reported in-scope imports from Mexico, was the only known importer from Mexico. Appx0060069-0060070; Appx0060129-0060130. The Commission noted that the Customs data are overinclusive and encompass both in-scope and out-of-scope product. Given that the scope of the investigations does not align precisely with the HTS numbers, the Commission explained that, without an importer questionnaire or other company-specific information, it could not discern whether the imports listed in the Customs data were in- or out-of-scope product. Appx0060069.

The Commission acknowledged that the Customs data show there are other companies that imported from Germany and Mexico in the overinclusive HTS categories, but absent importer questionnaire responses from these other companies, there was no evidence that they imported in-scope merchandise. Appx0060070. The Commission also cited to all 19 of the purchaser questionnaires it received, noting that

none of them identified as one of its top five 2020 suppliers any of the other companies listed in the overly broad Customs data. Appx0060070.

TMK continues to point to *all* companies and *all* imports from the overinclusive Customs data for *all* of 2019 that are listed as importing under the HTS numbers from Germany and Mexico and claims that all of these imports should be included in the negligibility calculation. Pl.'s Second Corrected Comments on Remand Redeterminations at 6-9 (ECF 98) ("Plaintiff's Remand Comments"). In its Comments to the Commission during the remand proceedings, TMK likewise argued that there were [ █ ] companies that imported from Germany and [ █ ] companies that imported from Mexico. Appx0060090, Appx0060093, Appx0060096-0060097. The Commission thoroughly addressed this argument, noting again that the Customs data do not distinguish between in- and out-of-scope imports. Appx0060070-0060071. The fact that there were other companies that imported unknown products under the HTS numbers during the negligibility period does not undermine the Commission's determinations that [ ██████ ] and [ ████ ] were the only known importers of in-scope imports from Germany and Mexico, respectively. As the Commission further noted in

*BUSINESS PROPRIETARY INFORMATION*
*SUBJECT TO PROTECTIVE ORDER REDACTED*

its remand determinations, many of the companies that Plaintiff insists should be included in the negligibility calculation either did not import any products under the relevant HTS numbers during the negligibility period or certified that they did not import in-scope imports during the negligibility period. Appx0060070-0060071. In fact, the Commission cited to record evidence—certifications from questionnaire respondents that they did not import any in-scope SSLPP during the period of investigation—contradicting TMK's claims that certain other companies imported in-scope products. Appx0060070-0060071.

The Commission further noted that, based on the relative size of [ █████ ] and [ █████ ] and their being the sole responding importers reporting in-scope imports from Germany and Mexico, respectively, their import volumes provide the best information available for estimating imports of in-scope merchandise during the negligibility period. Appx0060071-0060072.

Plaintiff ignores the statute when it claims the Commission "essentially adopted a 'good enough' standard" when it found that [ █████ ] reported in-scope imports from Mexico were a reasonable estimate of in-scope imports from Mexico. Plaintiff's Remand Comments

7

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

at 8-9 (citing Appx0060132). Congress recognized that the Commission "may not have access to either complete questionnaire data or official import statistics conforming exactly to the Commission's like product(s) designations," Statement of Administrative Action ("SAA") to the Uruguay Round Agreements Act ("URAA"), H.R. Doc. No. 103-316, vol. 1, 856 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773, 4188,[2] and explicitly authorized the Commission to make "reasonable estimates on the basis of available statistics" of pertinent import levels for purposes of deciding negligibility. 19 U.S.C. § 1677(24)(C). The Commission complied with the statue when it found that [ ▮ ] in-scope imports reported in its importer questionnaire were reasonable estimates of imports from Mexico. This finding was supported by substantial evidence, since, as noted, [ ▮ ] was the only known importer of in-scope imports from Mexico and was representative of imports from Mexico during the

---

[2] The URAA provides that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and {the URAA} in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d); *NEC Corp. v. Dep't of Comm.*, 22 CIT 1108, 1123 n.8, 36 F. Supp. 2d 380, 392 n.8 (1998) (quoting SAA at 656); *see also Delverde, SrL v. United States*, 21 CIT 1294, 1307 n.18, 989 F. Supp. 218, 229-30 n.18 (1997) ("'{I}t is the expectation of the Congress that future Administrations will observe and apply the interpretations and commitments set out in this Statement.'") (quoting SAA at 656).

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

negligibility period as it accounted for [ ████ ] percent of all imports

from Mexico under the HTS subheadings in Customs data.

Appx0060131-0060132.

 With regard to Germany, Plaintiff attempts to relitigate an issue

already decided by this Court in this case. The Court found that the

Commission did not act arbitrarily in relying on the initial importer

questionnaires of [ ██████ ] and [ ██████ ] instead of their revised

questionnaires. Slip Op. 23-150 at 9-10. Plaintiff's efforts to relitigate

this closed issue are unavailing. *See* Appx0060086, Appx0060089-

0060090. *See ArcelorMittal France v. AK Steel Corp.,* 786 F.3d 885, 888

(Fed. Cir. 2015) ("The law-of the-case doctrine posits that when a court

decides upon a rule of law, that decision should continue to govern the

same issues in the subsequent stages in the same case.") (quotation

omitted).

 Moreover, contrary to TMK's claim, the volume of in-scope and out-

of-scope imports from Germany reported in [ ██████ ] and

[ ██████ ] initial importer questionnaires do not exceed official

import statistics. Appx0060071; Appx0033427 ([ ██████ ] Initial

Importer Questionnaire); Appx0033754 ([ ██████ ] Initial Importer

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

Questionnaire at Q. II-3c); Appx0056430-0056616 (Official Import Statistics). Plaintiff mistakenly refers to the volume reported in [          ] revised importer questionnaire (Appx0046252-0046261 (at Question II-3c)) and not the initial importer questionnaire the Commission relied upon (Appx0033427). The Commission did not act arbitrarily in relying upon the initial importer questionnaires. As the fact finder, the "ITC is afforded considerable discretion in evaluating information obtained from questionnaires." *Int'l Indus. v. United States*, 311 F. Supp. 3d 1325, 1333 (Ct. Int'l Trade 2018) (quotations omitted).

Plaintiff also claims that the Commission's reasoning in its remand determinations is indistinguishable from the original determinations and that the Commission ignored the Customs data. Plaintiff's Remand Comments at 6-7. To the contrary, in complying with the Court's instructions, the Commission made new findings that [          ] and [          ] were the only known importers of in-scope imports from Germany and Mexico, and provided new, thorough analyses demonstrating that these findings were not contradicted by Customs data. Appx0060069-0060072.

10

Moreover, the Commission was not required to use unadjusted or adjusted official import statistics for measuring imports from Germany or Mexico. Plaintiff's Remand Comments at 4, 8. Consistent with the statute, the Commission could have made reasonable estimates based on official statistics or importer questionnaires from companies that were representative of total imports to reflect the information on the record concerning the actual import volumes during the relevant 12-month period. The Commission's choice of the latter was permissible and reasonable. The Commission thoroughly explained and provided a reasonable basis for its conclusions concerning the data for Germany and Mexico, including consideration of the Customs data.[3]

---

[3] In its role as trier of fact in injury investigations, "the Commission 'has the discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor in its analysis.'" *Nevinnomysskiy Azot v. United States*, 32 CIT 642, 653, 565 F. Supp. 2d 1357, 1367-68 (2008) (quoting *Goss Graphics Sys., Inc. v. United States*, 22 CIT 983, 1004, 33 F. Supp. 2d 1082, 1100 (1998), *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000)). As the Federal Circuit has stated, if "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert factfinder — here … the Presidentially-appointed, Senate-approved Commissioners — to decide which side's evidence to believe." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006).

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

**B.   The Commission Meaningfully Addressed the Evidence Proffered by TMK Regarding [        ] Imports from Germany**

The Commission likewise fully complied with the Court's instruction to meaningfully address the evidence proffered by TMK that TMK claims demonstrates [    ] imported in-scope imports from Germany, and not out-of-scope imports as [    ] certified in its importer questionnaire. The Commission addressed the bill of lading documentation, Section 232 exclusion requests, and Customs data showing that [    ] imported under a different antidumping duty order. Appx0060072-0060073. The Commission analyzed this evidence and concluded that it did not demonstrate that [    ] imported in-scope merchandise from Germany or undermine [    ] importer questionnaire response in which it attested that it did not import in-scope merchandise during the POI. Appx0060072-0060073.

Rather than contesting the Commission's analysis or conclusions, Plaintiff claims that the Commission had the responsibility to support Plaintiff's argument by supplementing the record. The Commission did not leave any gaps in the record regarding TMK's bills of lading documentation, it fully addressed the Section 232 evidence, and fully

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

addressed Plaintiff's claim regarding the imports for which [ ███ ] paid duties. Appx0060072-0060073.

In sum, the Commission's remand determinations fully complied with the Court's instructions and the Commission's findings are supported by substantial evidence and in accordance with law. The Court should therefore affirm the remand determinations.

## II.    The Commission Fully Complied with the Court's Instructions to Reconsider its Findings in Light of Certain Existing Evidence on the Record

TMK opens its Remand Comments with assertions about the Commission's failure to reopen the record. Plaintiff's Remand Comments at 2-4. But, while TMK noted during the remand proceedings that the Commission had indicated it was not reopening the record, TMK never objected to this decision. *See* Appx0060085. Rather, TMK simply noted the Commission's decision not to reopen the record, and proceeded to argue with extensive citations to record information, including exhibits it compiled from the "2580-page PDF document" containing the Customs data that was the subject of the remand, why it believed the evidence already in the record supported its views. *See* Appx0060085-0060098, Appx0060087 (n.2). In light of TMK's

failure to raise any actual arguments about reopening the record during the Commission's remand proceedings, the Court may deem this issue to be waived. *See*, *e.g.*, *Navneet Educ., Ltd. v. United States*, Slip Op. 23-191, at 32-24, *available at* 2023 WL 9018387, at *41-42 (Ct. Int'l Trade, Dec. 29, 2023) (finding that the standard for exhaustion requires more than "vague, conclusory statements," and distinguishing "three sentences of vague allegations" from pages of very specific argument).

In any event, reopening the record for a negligibility finding would be in tension with Congressional direction to make reasonable estimates based on the information available in the record. *See* 19 U.S.C. § 1677(24)(C). Especially given the nature of this inquiry, the Commission properly exercised its discretion to not reopen the record in these remand proceedings. Indeed, the Court's remand instructions focused on requests for the Commission to reconsider its calculations taking into account specific evidence already on the record: in one instruction, Customs data, and in the second instruction "in view of evidence to the contrary proffered by TMK." Remand Order at para. 2; *see also* Appx0060065. In its Comments to the Commission during the remand proceedings, TMK implicitly recognized as much, arguing that

to comply with the Court's instruction, "the Commission must rely on {in the record} unadjusted official import statistics to determine in-scope imports from Germany" (Appx0060085), and "should take a similar approach" for imports from Mexico (Appx0060086) and for "other imports" (Appx0060094); and that in addressing the Court's second instruction, the Commission should rely on TMK's Exhibit 3, compiled from the Customs data (Appx0060090) as well as factual information submitted by TMK "throughout the underlying proceeding." (Appx0060090).

The decision whether to reopen a record on remand generally is within the agency's discretion. *See, e.g.*, *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277-78 (Fed. Cir. 2012). In *Essar* the Federal Circuit found that it was "improper … for the trial court to remand and *require* that Commerce reopen and supplement the record" absent a showing that an exception was met such as fraud or an agency belief that the original data were inaccurate. *Id.* at 1278 (emphasis in original). No showing of fraud has been made or alleged here, and TMK simply overlooks that the agency, not the parties, has the discretion to ascertain if the existing data is inaccurate. Neither the Commission nor

15

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

the Court so found in this case, and reopening the record was unnecessary, particularly given Congress' instruction to rely on reasonable estimates based on the existing record for negligibility determinations.

Nor does TMK's citation to *New Am. Keg v. United States*, 2024 WL 379968 (Ct. Int'l Trade Jan. 31, 2024), advance its argument that the Commission was obligated to reopen the record. Rather, in that case, the Court addressed whether the Department of Commerce abused its discretion in reopening the record, not in relying on the existing record, as are the circumstances here.

As noted, in the instant case, the Court ordered the Commission to reconsider the data for calculating in-scope imports from Germany and Mexico in light of Customs data. Both the Customs data and the import data for [          ] and [          ] were already on the record for the Commission to address. The Court also ordered the Commission to meaningfully address the evidence proffered by TMK. Similarly, this evidence was also on the record. Therefore, the Commission reasonably determined that it was not necessary to reopen the record to address the remanded issues, and acted well within its discretion to decide the

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

remand issues on the existing record. *See* Appx0060006-0060007. "It would be illogical to remand based on the failure to collect information that" the Commission "has demonstrated it does not need." *Zhaoqing New Zhongya Aluminum Co. v. United States*, 38 CIT 203, 211, 961 F. Supp. 2d 1346, 1354 (2014). There was no need to reopen the record to add Customs data, as Plaintiff suggests. Plaintiff's Remand Comments at 2-4. The Commission was able to reconsider its determination for estimating imports from Germany and Mexico in light of Customs data with the information on the record. Supplementing the record with more Customs data would not change the analysis or determinations. The Customs data, whether as it exists on the record or supplemented, does not identify imports as in-scope SSLPP and out-of-scope merchandise under the HTS numbers, and does not contradict the Commission's finding that [ █████ ] and [ █████ ] were the only known producers of in-scope imports.

Nor did the Commission have an obligation to bolster Plaintiff's argument and supplement the record to prove [ █████ ] imported in-scope imports from Germany. As the Court instructed, the Commission reconsidered its calculation of in-scope imports by [ █████ ] in view of

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

the allegedly contrary record evidence proffered by TMK, including bill of lading documentation, Section 232 exclusion requests, and Customs data showing that the company imported under a different antidumping duty order. Appx0060072-0060073. Upon closer examination of this evidence, all of which was already in the record, the Commission found that TMK's evidence did not contradict the Commission's finding that [         ] did not import in-scope imports from Germany. Appx0060072-0060073. Just as the "{c}onstant reopening and supplementation of the record would lead to inefficiency and delay in finality," *New Am. Keg,* 2024 WL 379968, at *2, reopening the record in this case was uncalled for given that there was no need to do so.

Thus, the Court should find that the Commission properly exercised its discretion to not reopen the administrative record on remand.

## III.  Conclusion

For the foregoing reasons and all of the reasons set out in the Commission's Remand Views, we respectfully request that the Court affirm the Commission's affirmative remand determinations for SSLPP from Russia. Because the Commission fully complied with the Court's remand instructions, reasonably considered all the evidence, and

thoroughly explained its findings, the Commission's determinations are supported by substantial evidence and in accordance with law.

Respectfully submitted,

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for
    Litigation

*/s/ Madeline R. Heeren*
Madeline R. Heeren
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-1529
Facsimile: (202) 205-3111
Madeline.heeren@usitc.gov

*Attorneys for Defendant United States*
*International Trade Commission*

Dated: July 2, 2024

## **Certificate of Compliance with Word Count Limitations**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify

that the attached DEFENDANT UNITED STATES INTERNATIONAL

TRADE COMMISSION'S CORRECTED COMMENTS ON REMAND

DETERMINATION contains 3,493 words, according to the word-count

function of the word processing system used to prepare this brief

(Microsoft Word 2010).


Dated: July 2, 2024                    */s/ Madeline R. Heeren*
                                       Madeline R. Heeren
                                       Attorney-Advisor
                                       Office of the General Counsel
                                       U.S. International Trade Commission
                                       500 E Street, SW
                                       Washington, DC 20436
                                       Telephone: (202) 708-1529
                                       Facsimile: (202) 205-3111
                                       Madeline.heeren@usitc.gov