**Slip Op. 24-119**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Court No. 21-00532**

PAO TMK,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

UNITED STATES STEEL CORPORATION and VALLOUREC STAR, LP,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

## OPINION

[The court sustains the agency's redetermination.]

Dated: October 25, 2024

*Daniel J. Cannistra*, Crowell & Moring LLP, Washington, DC, on the comments for Plaintiff.

*Dominic L. Bianchi*, General Counsel; *Andrea C. Casson*, Assistant General Counsel for Litigation; and *Madeline R. Heeren*, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commis-

sion, Washington, DC, on the comments for Defendant.

*Thomas M. Beline* and *Mary Jane Alves*, Cassidy Levy Kent (USA) LLP, Washington, DC, on the comments for Defendant-Intervenor United States Steel Corporation. *Roger B. Schagrin* and *Elizabeth J. Drake*, Schagrin Associates, Washington, DC, on the comments for Defendant-Intervenor Vallourec Star, LP.

*Baker*, Judge: This case involving the International Trade Commission's conclusion that imports of Russian seamless pipe are non-negligible for purposes of a material injury determination returns following remand, where the Commission stood its ground. Finding the agency's decision supported by substantial evidence, the court sustains it.

I

In 2020, the Commission found that purchases of seamless pipe from Russia just barely exceeded the statutory negligibility threshold (three percent of all such imports). *PAO TMK v. United States*, Ct. No. 21-00532, Slip Op. 23-150, at 4–6, 2023 WL 6939242, at **1–2. (CIT Oct. 12, 2023).[1] PAO TMK, a Russian producer, challenged that determination. As relevant here, the court remanded for the agency to address U.S. Customs and Border Protection data contradicting the conclusion that only Company A obtained

---

[1] The court presumes the reader's familiarity with its previous opinion, including its use of pseudonyms for confidential company names.

seamless pipe from Germany and only Company B did so from Mexico. *Id.* at 9, 2023 WL 6939242, at *3.[2]

This matters because the Tariff Act of 1930, as amended, requires dividing the amount of in-scope purchases[3] from a given country (here, Russia) during the relevant period (the numerator) by the total quantity of in-scope goods imported from *all* nations in that same period (the denominator). *See* 19 U.S.C. § 1677(24)(A)(i); *see also* Slip Op. 23-150, at 3, 2023 WL 6939242, at *1 (quoting the statute). Acquisitions from a country are "negligible"—and not subject to

---

[2] The court also instructed the Commission to address TMK's evidence of in-scope imports from Germany by Company C. *Id.* at 10–11, 2023 WL 9639242, at *4.

[3] "The statute governing unfair trade investigations requires a determination by the Commission on whether imported articles within the scope of a particular investigation (the 'subject merchandise') have injured a domestic industry." *Autoliv Asp, Inc. v. United States*, 422 F. Supp. 3d 1295, 1300 (CIT 2019) (citing 19 U.S.C. §§ 1671, 1673). The Department of Commerce defines what is "within the scope" and the Commission must accept that definition. *Id.* Here, Commerce defined "in-scope" merchandise as including certain "seamless carbon and alloy steel (other than stainless steel) pipes" of specified dimensions. Appx0001471. The Department also listed Harmonized Tariff Schedule (HTS) codes under which such pipe typically enters the United States, although it cautioned that the list was for reader convenience and Customs purposes only and that the written scope description controlled. Appx0001471–0001472. In its original opinion, the court—following TMK's lead, *see* ECF 33-2, at 2—used "seamless pipe" as shorthand for "in-scope," a convention this decision also follows. As a technical matter, however, some types of seamless pipe may be outside the orders' boundaries.

**Ct. No. 21-00532** Page 4

antidumping and countervailing duties—if they "account for less than 3 percent" of the total volume. 19 U.S.C. § 1677(24)(A)(i). If seamless pipe buys from Germany and Mexico were higher than what the Commission originally found, it would increase the denominator for purposes of that calculation and thereby reduce Russia's relative share, which the agency previously found teeters on the statutory knife's edge.

On remand, the Commission found nothing to contradict its findings that Companies A and B "were the only *known* importers" of in-scope pipe from Germany and Mexico. Appx0060129 (emphasis added). It explained that the Customs data included purchases both within and beyond the orders' ambit and did not precisely align with the applicable HTS codes. *Id.* Furthermore, the codes themselves included both sorts of products. *Id.* Thus, the agency concluded that the Customs data alone do not allow for a determination of whether the orders encompass the reported imports. *Id.*

The Commission noted that such a determination requires either questionnaire responses or other company-specific information, but the only responses identifying in-scope imports from Germany and Mexico were from Companies A and B, respectively. Appx0060129–0060130. It acknowledged that the Customs data showed that other companies bought from those two countries, but said the data were inconclusive as to scope. Appx0060130. The agency therefore relied on the two questionnaire responses as reasonable estimates of the overall volume of in-scope imports from Germany and Mexico because the Customs data

did show that Companies A and B were by far the largest steel pipe importers during the relevant period. Appx0060131–0060133.[4] It thus reaffirmed its original determination that purchases from Russia were just barely over three percent of the total and therefore non-negligible. Appx0060135–0060136.

## II

TMK challenges the Commission's redetermination on three grounds. First, it attacks the agency's refusal to reopen the record. *See* ECF 112, at 2–4. Second, it asserts that substantial evidence does not support the finding that Company A is the "only importer" from Germany. *Id.* at 4–7. Finally, it makes a similar argument about Company B and Mexico. *Id.* at 7–9. Each of these contentions fails.

### A

In its notice of remand proceedings, the Commission announced that it was "not reopening the record

---

[4] As for the second issue on remand—TMK's evidence bearing on Company C's in-scope imports from Germany, *see* note 2—the Commission observed that the Russian entity cited bill of lading documentation, Section 232 exclusion requests, and Customs data showing Company C had made imports subject to a different antidumping order. Appx0060133. The agency found that none of this material showed that Company C imported merchandise within the ambit of *this* investigation during the relevant period or otherwise undermined its questionnaire responses. *Id.* Apart from its contention that the Commission should have reopened the record, discussed below, TMK asserts no challenge to this finding.

and [would] not accept the submission of new factual information . . . ." Appx0060003. TMK argues that the agency should have done exactly that as to both remanded issues because the original determination was based on incomplete data from Customs. ECF 112, at 3–4. The Commission responds that the company never objected to its decision to rely only on the existing record. ECF 110-1, at 13–14.

Under exhaustion doctrine, courts help parties that help themselves before federal agencies. Having failed to ask the Commission to reopen the record, it's now too late for TMK to complain: "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Deseado Int'l, Ltd. v. United States*, 600 F.3d 1377, 1380–81 (Fed. Cir. 2010) (quoting *United States v. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).

B

TMK argues that the Commission erred in relying solely on Company A's initial questionnaire to determine in-scope imports from Germany because the Customs data show that other companies also made such buys. ECF 112, at 5–6.[5] It claims that by not using that

---

[5] In passing, *see* ECF 112, at 5, TMK also attacks the Commission's reliance—in its *original* determination—on Company's A initial questionnaire response, which disclosed in-scope imports from Germany. *See* Slip Op. 23-150, at 10,

data, the agency erroneously omitted other acquisitions from the negligibility analysis, so the remand results are "indistinguishable from [the] original determination that was found to be unlawful." ECF 112, at 6–7. The Russian company asks the court to order the Commission to include German imports from those other entities. *Id.* at 4.

TMK mischaracterizes the remand instructions. The court ordered the agency "to *address* the Customs data." Slip Op. 23-150, at 9, 2023 WL 6939242, at *3 (emphasis added). The Commission did so and explained that as the data were inconclusive, they were useless for assessing the total volume of in-scope pipe. Appx0060129. Because Company A's imports represented an overwhelming portion of the German total, the agency found it reasonable to use its purchases as the best estimate available for total in-scope

---

2023 WL 6939242, at *4. The Russian entity contends that this response "conflicts with official statistics." ECF 112, at 5. This is a puzzling contention, as counting Company A's in-scope imports from Germany *aids* the former's cause by increasing the denominator for purposes of the negligibility analysis. In any event, TMK never asserted this argument in the first round of litigation, where it had every opportunity to do so. The court's sustaining of the agency's reliance on Company A's initial response is the law of the case and no longer susceptible to challenge at this rung of the judicial ladder. *Cf. Nw. Ind. Tel. Co. v. FCC*, 872 F.2d 465, 470 (D.C. Cir. 1989) (refusing to consider arguments not raised in original agency proceedings or on original pre-remand appeal because "[i]t is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand") (citation omitted).

Ct. No. 21-00532 Page 8

imports from that country. Appx0060132–0060133. TMK offers no meaningful response. The agency's explanation accords with the statute's allowance for "reasonable estimates on the basis of available statistics," 19 U.S.C. § 1677(24)(C), so the court sustains it.

C

Finally, TMK challenges the Commission's reliance on Company B's initial questionnaire response to estimate in-scope imports of seamless pipe from Mexico. The Russian entity contends that because the Customs data showed that there were other businesses *also* buying in-scope Mexican pipe, the agency should have begun "its analysis with the official statistics and subtract[ed] out-of-scope import volumes on the record," that is, Company B's, the only importer that disclosed out-of-scope Mexican purchases. ECF 112, at 7–8.

TMK's argument has a fatal flaw: That no other entity reported out-of-scope imports from Mexico does not mean that 100 percent of their buys from that country were *in-scope*. The agency reasonably explained that because the record is inconclusive as to the scope status of imports from Mexico other than Company B's, it relied on the latter's data as an estimate of the whole. Appx0060130–0060132. As with the German analysis, the court holds that explanation is supported by substantial evidence and consistent with the statute.

\* \* \*

The court sustains the International Trade Commission's remand redetermination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated: October 25, 2024            /s/ *M. Miller Baker*
        New York, NY                Judge